IN RE the MARRIAGE OF: Rita M. MICHALIK,
Petitioner-Appellant,†

v.

Kenneth E. MICHALIK, Respondent-Respondent.

Court of Appeals

*No. 90-2497. Submitted on briefs July 2, 1991.—Decided
September 10, 1991.*

(Also reported in 476 N.W.2d 586.)

†Petition to review granted.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Patricia L. Grove* of *Halling & Cayo, S.C.* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the briefs of *C. Michael Hausman* of *Slattery & Hausman, Ltd.* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   This appeal involves the interpretation of the Parental Kidnapping Prevention Act of 1980, 28

U.S.C. § 1738A, and raises the significant question of whether, and under what circumstances, a Wisconsin court may modify a child custody determination entered by a court of another state.[1] Rita M. Michalik appeals from an order declining to interfere with a prior custody order entered by an Indiana court. We affirm.

## I.

Three minor children were born to Rita M. and Kenneth E. Michalik during the course of their marriage. The children are now eleven, nine, and seven. The Michaliks were granted a divorce by the Superior Court of Porter County, Indiana, by a Dissolution Decree entered by that court on October 1, 1987, *nunc pro tunc* to March 3, 1987. The decree granted to Rita Michalik custody of the children subject to Kenneth Michalik's visitation rights, the nature of which were specified in the decree.

The visitation schedule set out in the October 1, 1987, decree apparently created some problems between the Michaliks because on March 9, 1989, the Indiana court entered an order finding Rita Michalik in contempt of the "Visitation Order of this Court," but hold-

---

[1]Despite its name, the Parental Kidnapping Prevention Act of 1980 "is not a criminal kidnapping law but rather a federal law regarding custody disputes." Shapiro, *Uniform Child Custody Jurisdiction Act (UCCJA) and the Parental Kidnapping Prevention Act (PKPA): A Comparative Study,* 11 Wis. J. Fam. Law 1 (1991); *see also* Cooper, *The Parental Kidnapping Prevention Act (PKPA) of 1980—The Most Often Ignored Law in Family Court,* 11 Wis. J. Fam. Law 10 (1991). Nevertheless, it was enacted to eliminate the incentive for one parent unhappy with a state's custody decree to "kidnap" his or her child and flee to another state in order to "relitigate the issue." *Thompson v. Thompson,* 484 U.S. 174, 180 (1988).

ing open punishment. The March 9 order noted that Rita Michalik's "compliance with Visitation Orders in the future would likely purge her of the contempt." The March 9, 1989, order also modified the visitation schedule.

On May 1, 1989, Rita Michalik and the children moved to Milwaukee. As a result, the Michaliks agreed to a modification of the visitation schedule. On June 7, 1989, the Michaliks' written stipulation encompassing their agreement was approved by the Indiana court. The stipulation also provided that:

> The parties further stipulate that the Porter Superior Court, sitting in Valparaiso, Indiana shall retain in personam jurisdiction over the parties with reference to said dissolution action and all subsequent post-decree modifications therein.

On December 1, 1989, Rita Michalik brought this action against Kenneth Michalik in Milwaukee circuit court seeking, *inter alia,* a divorce, custody of the Michaliks' children, and a division of the parties' property. Rita Michalik's petition alleged that an "action for divorce by the parties hereto has been concluded in Porter County in the State of Indiana on the 3rd day of March, 1987," and attached a copy of the October 1, 1987, decree entered by the Indiana court. A copy of the June 7, 1989, order approving the parties' stipulated modification of Kenneth Michalik's visitation schedule was also attached to Rita Michalik's petition. Rita Michalik's Milwaukee County petition further alleged that "[t]he parties have not entered into any written agreement as to support, custody, visitation of the children, . . . save for orders of the court or judgment of divorce."

On December 4, 1989, Kenneth Michalik again complained to the Indiana court that Rita Michalik was interfering with his visitation rights, and sought temporary custody of the children. On December 28, 1989, the Indiana court found Rita Michalik in contempt of court and gave temporary custody of the children to Kenneth Michalik. This order was vacated by the Indiana court on March 1, 1990, however, and all orders entered by the Indiana court prior to December 28, 1989, were ordered to "remain in full force and effect."

On January 22, 1990, the circuit court in Milwaukee County stayed proceedings in Rita Michalik's Wisconsin "divorce" action "until such time as this Court is notified that Indiana chooses not to exercise its jurisdiction and elects to allow Wisconsin to hear the matter, or an appellate court directs Wisconsin to hear the matter." Rita Michalik neither sought trial-court reconsideration nor appealed or sought leave to appeal from this order. Nevertheless, by an order to show cause signed by the trial court and filed June 8, 1990, Rita Michalik requested that the circuit court in Milwaukee County modify "the summer (school recess) visitation schedule of the parties." Kenneth Michalik objected, contending that the Wisconsin court should not hear the matter.[2]

On October 16, 1990, the Wisconsin trial court entered an order finding that the children "have the closest and most significant connections with the State of Wisconsin," and that Wisconsin was the children's

---

[2]The reason for Kenneth Michalik's objection is not clear from the appellate record. Apparently, however, it was not based on the argument that the trial court's authority to modify the Indiana child custody determinations was preempted by federal law. Since federal preemption goes to our jurisdiction, however, it may be raised at any time. *See Chicago & N.W. Ry. v. La Follette*, 27 Wis. 2d 505, 512, 135 N.W.2d 269, 273 (1965).

"home state" under ch. 822, Stats., the Uniform Child Custody Jurisdiction Act.[3] Although concluding that it thus had "concurrent subject matter jurisdiction" with Indiana, the trial court decided to defer to the Indiana court "regarding determinations or modification of visitation issues arising under the Dissolution Decree, and Modified Stipulation, as such relate to proceedings appropriate for consideration under Wis. Stats. Chapter 822 (Uniform Child Custody Jurisdiction Act)." Rita Michalik appeals, and argues that because Wisconsin has "home state" jurisdiction over the children "Indiana could not act in custody matters and any orders it may have entered were unenforceable because they were in violation of the [Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A]." We disagree; a child's "home state" for the purposes of the Uniform Child Custody Jurisdiction Act, ch. 822, Stats., is not necessarily the child's "home State" as that term is defined by the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A.

---

[3]The Uniform Child Custody Jurisdiction Act, ch. 822, Stats., was enacted to avoid interstate custody disputes, thereby advancing the interests of children in having some stability in their lives. *See* sec. 822.01(1), Stats. In connection with a child more than six months old, the term "home state" is defined by the Uniform Child Custody Jurisdiction Act to mean "the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least 6 consecutive months . . . [including] [p]eriods of temporary absence of any of the named persons." Section 822.02(5), Stats. The Uniform Child Custody Jurisdiction Act also provides, *inter alia,* that courts of this state have jurisdiction "to make a child custody determination by initial or modification decree if: (a) This state is the home state of the child at the time of the commencement of the proceeding." Section 822.03(1), Stats.

## II.

A. Article IV, section 1, of the United States Constitution requires that each state give "Full Faith and Credit" to the "public Acts, Records, and judicial Proceedings of every other State," and authorizes Congress to "prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Pursuant to this authority, Congress enacted the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A. *See Thompson v. Thompson,* 484 U.S. 174, 181–182 (1988). Additionally, Article VI, clause 2, of the United States Constitution provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding." The Parental Kidnapping Prevention Act of 1980 is thus conclusive on the issues to which it is applicable:

> Once a State exercises jurisdiction consistently with the provisions of the [Parental Kidnapping Prevention] Act, no other State may exercise concurrent jurisdiction over the custody dispute, § 1738A(g), even if it would have been empowered to take jurisdiction in the first instance, and all States must accord full faith and credit to the first State's ensuing custody decree.[4]

---

[4]28 U.S.C. § 1738A(g) provides:

A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

*See Thompson,* 484 U.S. at 177 (footnote omitted); *see also In Interest of A.E.H.,* 161 Wis. 2d 277, 322, 468 N.W.2d 190, 208-209 (1991).

As pertinent to this appeal, the Parental Kidnapping Prevention Act of 1980 provides that:

> The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

28 U.S.C. § 1738A(a).[5] A state's "child custody determination" is consistent with the provisions of 28 U.S.C. § 1738A, a precondition to Act's direction that the determination not be modified by any other state, if the state court making the "child custody determination:"

> (1) . . . has jurisdiction under the law of such State; and
> (2) one of the following conditions is met:
>
> (A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) . . ..

---

[5]The word "child" is defined by the Act to mean "a person under the age of eighteen." 28 U.S.C. § 1738A(b)(1). The term "custody determination" is defined by the Act to mean "a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications." 28 U.S.C. § 1738A(b)(3). The words " 'modification' and 'modify' refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not." 28 U.S.C. § 1738A(b)(5).

28 U.S.C. § 1738A(c). The term "home State" is defined by the Act to mean "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months . . .." 28 U.S.C. § 1738A(b)(4).

Subsection (f), which, as we have seen, is an exception to the prohibition against modification contained in subsection (a), provides:

> A court of a State may modify a determination of the custody of the same child made by a court of another State, if—
>
> > (1)   it has jurisdiction to make such a child custody determination; and
> >
> > (2)   the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C. § 1738A(f). Additionally, the Parental Kidnapping Prevention Act expresses its clear intent to reserve the modification of child custody determinations to the state of initial rendition:

> The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section [that the state has jurisdiction under its own law] continues to be met and such State remains the residence of the child or of any contestant.

28 U.S.C. § 1738A(d).[6] Furthermore, as we have seen in footnote 4, *supra,* the Act bars the courts of any state

---

[6]The term "contestant" is defined by the Act to mean "a

from interfering with child custody disputes over which another state court is currently exercising jurisdiction in accordance with 28 U.S.C. § 1738A:

> A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

28 U.S.C. § 1738A(g). The Parental Kidnapping Prevention Act thus preserves to the state that initially enters a child custody determination that is valid under its own law and is consistent with the Act, the sole prerogative to modify that determination, as long as any modification would also be valid under its own law and either the child or a contestant continues to live in the state.

> The effect of §§ 1738A(d) and 1738A(f) is to limit custody jurisdiction to the first state to properly enter a custody order, so long as two sets of requirements are met. First, the [Parental Kidnapping Prevention Act] defines a *federal* standard for continuing exclusive custody jurisdiction: the first state must have had proper initial custody jurisdiction when it entered its first order (according to criteria in the Act) and it must remain "the residence of the child or any contestant" when it later modifies that order. Second, the Act incorporates a *state law* inquiry: in order to retain exclusive responsibility for modifying its prior order the first state must still have custody jurisdiction as a matter of its own custody law. Even if the federal and state criteria for continuing jurisdiction are met, the first state's courts can, if they

---

person, including a parent, who claims a right to custody or visitation of a child." 28 U.S.C. § 1738A(b)(2).

choose, voluntarily relinquish their jurisdiction in favor of a court better situated to assess the child's needs.

*Meade v. Meade,* 812 F.2d 1473, 1477 (4th Cir. 1987) (emphasis in original). These principles govern our analysis.

B.   Rita Michalik does not claim that the Indiana court did not have jurisdiction under its own law to enter the October 1, 1987, dissolution decree or subsequent modifications of that decree. *See* 28 U.S.C. § 1738A(c)(1) (A state court must have jurisdiction to enter a child custody determination before that child custody determination can be consistent with the provisions of 28 U.S.C. § 1738A.). Additionally, as we have seen, the parties stipulated before the Indiana court that it would "retain in personam jurisdiction" over them in connection with the dissolution decree, and "all subsequent post-decree modifications." Thus, Rita Michalik does not argue that Indiana's on-going exercise of jurisdiction in connection with the dissolution decree, consistent with the parties' stipulation, is not valid under Indiana law. Indeed, her reply brief specifically asserts that "[b]oth Indiana and Wisconsin have concurrent jurisdiction over the custody of the Michalik children." Furthermore, Kenneth Michalik, a "contestant" as defined by 28 U.S.C. § 1738A(b)(2), "continues to live in" Indiana. *See* 28 U.S.C. § 1738A(c)(2)(A). Finally, Rita Michalik does not claim that the Indiana court has "declined to exercise [its] jurisdiction to modify [its child custody] determination[s]," *see* 28 U.S.C. § 1738A(f)(2). Thus, the issue of whether Wisconsin may exercise child-custody-determination jurisdiction concurrent with Indiana depends on (1) whether the Indiana court's initial child custody determination was consistent with the provisions of 28 U.S.C. § 1738A, *see* 28 U.S.C. § 1738A(a),

and, (2) whether the Indiana court's on-going exercise of child-custody-determination jurisdiction is consistent with the provisions of 28 U.S.C. § 1738A, *see* 28 U.S.C. § 1738A(g).

The Indiana court's child custody determination and its ongoing exercise of child-custody-determination jurisdiction is consistent with the Parental Kidnapping Prevention Act if Indiana was the "home State of the child[ren] on the date of the commencement of the proceeding," *see* 28 U.S.C. § 1738A(c)(2)(A)(i); that is, if the children lived with their parents in Indiana "for at least six consecutive months" prior to the commencement of the "proceeding," *see* 28 U.S.C. § 1738A(b)(4). This requires an interpretation of the word "proceeding," which is not defined by the Act.

If the word "proceeding" as used in 28 U.S.C. § 1738A(c)(2)(A) refers to the divorce/custody determination in Indiana, Indiana is the children's "home State" for purposes of 28 U.S.C. § 1738A because the children were living in Indiana with their parents more than six months prior to the commencement of the action that resulted in the Dissolution Decree entered October 1, 1987, *nunc pro tunc* to March 3, 1987. Wisconsin, however, is the children's "home State" for purposes of 28 U.S.C. § 1738A if the word "proceeding" refers to the Wisconsin litigation.[7] This is a question of

---

[7] As seen in footnote 3, *supra,* section 822.03(1), Stats., gives Wisconsin jurisdiction over a child custody proceeding if Wisconsin is the child's "home state" when the proceeding is commenced. This fact does not answer the question of whether Wisconsin or Indiana is the "home State" of the Michalik children under the Parental Kidnapping Prevention Act for the purposes of determining whether Indiana's initial and continuing exercise of child-custody-determination jurisdiction over the children is

law that we decide *de novo. See In Interest of A.E.H.,* 161 Wis. 2d at 299, 468 N.W.2d at 199.

■

Since the word "proceeding" is not defined in 28 U.S.C. § 1738A, we must look to its context and the general intent of the legislation to ascertain its meaning. *See State v. Bruckner,* 151 Wis. 2d 833, 844–845, 447 N.W.2d 376, 381 (Ct. App. 1989). The Parental Kidnapping Prevention Act of 1980 was enacted to correct what Congress perceived was the failure of state courts hearing custody disputes that involved custody determinations by other jurisdictions "to give full faith and credit to the judicial proceedings of the other jurisdictions." Pub. L. No. 96–611, § 7(a)(4), 94 Stat. 3566, 3569. Thus, Congress believed that national full-faith-and-credit standards were needed in order to advance the following goals:

> (1) promote cooperation between State courts to the end that a determination of custody and visitation is rendered in the State which can best decide the case in the interest of the child;
> (2) promote and expand the exchange of information and other forms of mutual assistance between States which are concerned with the same child;
> (3) facilitate the enforcement of custody and visitation decrees of sister States;
> (4) discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

consistent with 28 U.S.C. § 1738A. As noted by the fourth circuit, The Parental Kidnapping Prevention Act "quite simply preempts conflicting state court methods for ascertaining custody jurisdiction." *Meade,* 812 F.2d at 1476.

556

(5) avoid jurisdictional competition and conflict between State courts in matters of child custody and visitation which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being; and

(6) deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards.

Pub. L. 96–611, § 7(c), 94 Stat. at 3569; *see also Thompson,* 484 U.S. at 181–182.

■ Pursuant to its authority under article IV, section 1, of the United States Constitution, Congress provided that a state's child custody determination is entitled to full faith and credit only if that state is the child's "home State." Although a child's "home state" for the purposes of the Uniform Child Custody Jurisdiction Act may change following a move from one state to another, implementation of Congressional intent in formulating and enacting the Parental Kidnapping Prevention Act of 1980 would be frustrated if the first state's child custody determination were vulnerable to modification by a state into which the child is taken; such an interpretation would encourage rather than "deter interstate abductions and other unilateral removals of children." *See* Pub. L. 96–611, § 7(c)(6), 94 Stat. at 3569; *see also Thompson,* 484 U.S. at 180. Thus, a child's "home State" for the purposes of determining whether an initial child custody determination was consistent with the Parental Kidnapping Prevention Act must be the state in which the child has lived with a parent for at least six months prior to the commencement of the proceeding that resulted in that determination—not the state to which the child might have been taken. *See Meade,* 812 F.2d at 1476 ("The [Parental Kidnapping Prevention

Act] quite simply preempts conflicting state court methods for ascertaining custody jurisdiction.").

Since the Michalik children lived in Indiana for at least six months prior to the commencement of their parents' divorce proceeding, and Indiana had jurisdiction under its own law to grant the decree and render the child custody determination, Indiana was the children's "home State." Thus, the October 1, 1987, Dissolution Decree was consistent with the provisions of the Parental Kidnapping Prevention Act. *See* 28 U.S.C. § 1738A(a), (c)(1), & (c)(2)(A)(i). Additionally, since Kenneth Michalik continues to live in Indiana, and there is no claim that Indiana does not have on-going jurisdiction over the decree under its own law, Indiana has continuing child-custody-determination jurisdiction over the Michalik children. *See* 28 U.S.C. § 1738A(d). Under these circumstances, the Parental Kidnapping Prevention Act precludes courts in Wisconsin from modifying the child custody determinations of the Indiana court and from interfering with that court's on-going exercise of its child-custody-determination jurisdiction. Accordingly, the order of the trial court is affirmed.[8]

*By the Court.*—Order affirmed.

[8]As noted, the trial court's decision to defer to the Indiana court was based on its analysis of the Uniform Child Custody Jurisdiction Act, ch. 822, Stats. The Parental Kidnapping Prevention Act of 1980, however, preempts state law. Thus, the trial court lacked authority to modify the Indiana child custody decree even if that were deemed to be appropriate under chapter 822. We may, nevertheless, affirm. *See State v. Alles,* 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982). Additionally, we need not discuss whether the result we reach is also dictated by chapter 822. *See*

*Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).