CHEVRON CHEMICAL COMPANY, Plaintiff-Respondent,†

FIRST BRANDS CORPORATION, Plaintiff,

v.

DELOITTE & TOUCHE, Defendant-Appellant.††

Court of Appeals

*No. 91-0470. Oral argument January 15, 1992.—Decided March 31, 1992.*

(Also reported in 483 N.W.2d 314.)

† Petition to cross review granted.

†† Petition to review granted.

323

For the defendant-appellant the cause was orally argued by *John W. Hein* and submitted on the briefs of *Gibbs, Roper, Loots & Williams, S.C.* by *John W. Hein* and *David J. Edquist,* of Milwaukee.

For the plaintiff-respondent the cause was orally argued by *David L. DeBruin* and submitted on the briefs of *Kravit, Lammiman & De Bruin, S.C.* by *David L. De Bruin* and *Ralph A. Weber,* of Milwaukee.

For the American Institute of Certified Public Accountants the cause was submitted on the *amicus curiae* brief of *Cook & Franke, S.C.* by *L. William Staudenmaier,* of Milwaukee, with *Willkie Farr & Gallagher* by *Louis A. Craco* and *Russell G. Ryan,* of counsel, of New York, New York.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J. Deloitte & Touche (Deloitte), a Delaware partnership, appeals from a judgment granting Chevron Chemical Company (Chevron) the sum of $1,646,106 in damages, plus double costs[1] and disbursements of the action. The judgment from which Deloitte appeals is based upon an order entered January 18, 1991, (1) granting judgment notwithstanding the verdict on a claim of negligent misrepresentation, (2) changing the jury's answer to a special verdict question on a claim of intentional misrepresentation to favor Chevron rather than Deloitte, and (3) setting the dollar amount of damages to Chevron in the absence of a determination by the jury. We hold that because the trial court was incorrect in its initial refusal to grant summary judgment on negligent misrepresentation to Chevron, the subsequent judgment notwithstanding the verdict was correct. Further, we hold that because the amount of damages was contested at trial, the trial court may not determine the amount of damages. Therefore, the judgment of the trial court is affirmed in part and reversed in part, and remanded to the trial court with instructions for trial on the issue of damages.

The American Fuel & Supply Co., Inc. (AFSCo), a company that distributed motor oil, automotive supplies,

---

[1]Chevron was granted double taxable costs because the amount of judgment exceeded a statutory settlement offer made by Chevron. *See* sec. 807.01(3), Stats.

hardware, and lawn and garden merchandise, hired Deloitte (then Touche Ross & Co.) in the capacity of independent auditor. Deloitte prepared an audit report, dated February 28, 1986, on the December 31, 1985, financial statements (the 1985 financials) of AFSCo. The 1985 financials contained and compared information based upon AFSCo's December 31, 1984 and 1985 balance statements, income statements, statements of changes in financial position and various other materials. One hundred printed copies of the 1985 financials were delivered to AFSCo, which in turn distributed them to its creditors. Chevron was the second largest trade creditor (unsecured) of AFSCo.

In early 1986, Deloitte discovered that, as a result of AFSCo's "rebilling" policy, the 1985 audit was in error. "Rebilling" was a procedure by which AFSCo allowed unsold products to remain in the possession of its distributors, although AFSCo records showed the products had been returned to AFSCo. Subsequently, AFSCo would send new (second) payment statements to those distributors for the previously distributed products already in their possession. As a result of the rebilling practice, Deloitte's printed financial statement contained an error of approximately $900,000. Because of this error, AFSCo was shown as making a profit for the year 1985, although in fact it was in deficit. Chevron relied upon the 1985 financials in its subsequent decisions to extend credit to AFSCo for the purchase of various products.

When Deloitte determined that AFSCo's rebilling practice had resulted in the generation of an incorrect audit report, it urged AFSCo to recall the report. When AFSCo refused, Deloitte indicated its intent to withdraw the 1985 audit and to so advise any entity known to be relying upon them. However, following a meeting at

which AFSCo's counsel characterized Deloitte's contemplated notification as a breach of confidence and threatened legal action, Deloitte did not notify AFSCo's vendors of the error in the 1985 financials. Deloitte notified only one creditor, a secured lender who is not a party to this action, that its report on the 1985 financials had been withdrawn and should not be relied upon.

AFSCo filed for bankruptcy on April 23, 1987. On January 30, 1989, Chevron began this action alleging both negligence in the Deloitte audit of the 1985 financials and misrepresentation based upon Deloitte's failure to notify Chevron of Deloitte's withdrawal of its report. Larry Plotkin, AFSCo's president, sole shareholder and director, and guarantor of AFSCo's obligations to Chevron, filed for bankruptcy on October 14, 1989. On September 25, 1990, Chevron was granted partial summary judgment on the misrepresentation claims.[2] However, on October 1, 1990, Chevron's motion for summary judgment on its claim of negligent misrepresentation was again denied. After a five-week trial, the jury found that (1) Deloitte was not negligent in the audit of the 1985 financials,[3] (2) Deloitte did not act with intent to deceive Chevron or induce its reliance on the 1985 financials,[4] (3) Deloitte was not negligent in failing to notify plaintiffs of the withdrawal of the audit

----

[2]We note that both parties had moved for summary judgment on the "claims concerning [Deloitte's] decision not to notify [them] of the withdrawal of [Deloitte's] audit report or [Deloitte's] discovery of the error in the 1985 financial statements." The parties thus "conced[ed], at least as to some issues, that there are no genuine disputes of material fact."

[3]This answer by the jury resolves the common-law negligence claim.

[4]This answer by the jury resolves the intentional misrepresentation claim.

329

report,[5] and (4) Chevron's damages were $715,000.[6]

On motions after verdict, the trial court granted Chevron judgment notwithstanding the jury's verdict on negligent misrepresentation. The trial court also changed the jury's answer to the question on intentional misrepresentation, on the grounds that there was no credible evidence to support the jury's findings. In addition, the trial court held in the alternative that judgment would be granted as a sanction for the misconduct of Deloitte's counsel, pursuant to sections 805.03 and 804.12(2)(a), Stats. The trial court also found Chevron's damages to be over $1.6 million, disregarding the jury's finding of $715,000 for damages based upon "its reliance on AFSCo's 1985 financial statements" audited by Deloitte.[7]

We first address the issue of negligent misrepresentation. Because we determine that the trial court's refusal to grant summary judgment for Chevron on the issue of negligent misrepresentation was an error corrected by its subsequent judgment, we need not address the issues of intentional misrepresentation or sanction for attorney misconduct.[8]

---

[5]This answer by the jury resolves the negligent misrepresentation claim.

[6]This is the jury's damage answer to Chevron's common-law negligence claim.

[7]This special verdict question was placed in the section of the verdict subtitled "AUDIT NEGLIGENCE CLAIMS"; the jury was instructed to answer it regardless of its answer to the other questions in that subsection, i.e., questions concerning negligence and cause on the part of Chevron and/or Deloitte.

[8]*See Michalik v. Michalik,* 164 Wis. 2d 544, 593 n.8, 476 N.W.2d 586, 593 n.8 (Ct. App. 1991) (citing with approval *Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938)).

A trial court may grant judgment notwithstanding the jury's verdict when "the verdict is proper but, for reasons evident in the record which bear upon matters not included in the verdict, the movant should have judgment."[9] A motion for judgment notwithstanding the verdict does not challenge whether there is sufficient evidence to support fact-finding, but whether the facts that have been found, as a matter of law, permit recovery.[10] We agree with the trial court's characterization of its post-verdict decision as a question of law when it stated:

> The defendant has failed to identify any element of the negligent misrepresentation claim that remained for determination by the jury. . . . On the undisputed facts in this case as set forth in the Court's decision on September 25, 1990, Touche was negligent as a matter of law in failing to notify plaintiff of the withdrawal of their opinion.

This court reviews a question of law de novo, without deference to the decisions of the trial court.[11] However, we are free to acknowledge a correct statement and application of the law by a trial court. At the summary judgment hearing prior to trial, the trial court correctly stated that under Wisconsin law, negligent misrepresentation has four elements:

---

[9]Section 805.14(5)(b), Stats.

[10]*Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Boeck,* 127 Wis. 2d 127, 137–38, 377 N.W.2d 605, 610 (1985) (citing *Herro v. DNR,* 67 Wis. 2d 407, 413, 227 N.W.2d 456, 461–62 (1975) and *Wozniak v. Local 1111,* 57 Wis. 2d 725, 733, 205 N.W.2d 369, 373–74 (1973)).

[11]*In re E.C.,* 130 Wis. 2d 376, 381, 387 N.W.2d 72, 74 (1986).

(1) a representation of fact made by the defendant,

(2) the representation of fact is untrue,

(3) the defendant was negligent in making the representation of fact, and

(4) plaintiff's belief that the representation was true and reliance thereupon to plaintiff's damage.[12]

We examine the materials submitted[13] to the trial court, as the trial court did,[14] and agree that sufficient facts were undisputed to establish that three of the above elements of negligent misrepresentation had occurred.

---

[12]Wis J I—Civil 2403. The tort of negligent misrepresentation in Wisconsin is a specific development of the common law of negligence; the interrelationship between the elements of the theory of negligent misrepresentation and those of a cause of action in negligence is illustrated in the following statement:

> [The] theory of negligent misrepresentation[ ] requires a showing that defendant made a misrepresentation of fact upon which the plaintiffs relied to their detriment. The specific elements of a cause of action in negligence are: (1) a duty of care or a voluntary assumption of a duty on the part of the defendant; (2) a breach of the duty (which involves a failure to exercise ordinary care in making a representation or in ascertaining the facts); (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury.

*Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 319, 401 N.W.2d 816, 822 (1987). *See also D'Huyvetter v. A.O. Smith Harvestore Products,* 164 Wis. 2d 306, 331, 475 N.W.2d 587, 596 (Ct. App. 1991), *review dismissed,* 475 N.W.2d 585 (1991), which restates the "elements of a cause of action in negligence" from *Green Spring Farms* as "the elements of a claim for negligent misrepresentation" with only a minimal reference to the specific details of misrepresentation.

[13]See sec. 802.08(2), Stats.

[14]*Dobratz v. Thomson,* 161 Wis. 2d 502, 512–13, 468 N.W.2d 654, 657–58 (1991).

At this point, the trial court characterized Deloitte's failure to notify plaintiffs of the withdrawal of the 1985 opinion as a "representation which was untrue and on which plaintiffs relied to their damage." However, the trial court held that the third element (that Deloitte was negligent in making the representation) remained a genuine issue of material fact,[15] stating "a genuine dispute of fact exists only with respect to defendant's failure of due care . . .."[16] At this point we disagree with the trial court.

[15]The trial court stated that whether Touche's decision not to notify plaintiffs was a "failure of due care or an intentional misrepresentation or neither presents a genuine issue of material fact."

[16]However, the trial court enumerated the following, *inter alia,* as undisputed facts:

1. On August 20, 1986, James Wagner, the Deloitte manager on the AFSCo account stated that "there is a set of financial statements out being used by [AFSCo's] vendors and lenders that has an error in it."

2. During a September 5, 1986 conference call between Deloitte personnel and Wagner, William Pennow (a Deloitte partner and Wagner's superior) and Robert Mannix (assistant general counsel for Deloitte), Deloitte "stated that unless AFSCo notified its creditors and vendors of the existence of the error in the financial statements, Touche would withdraw their opinion and give notice to its creditors and vendors whom they knew were relying upon the financial statements that their opinion had been withdrawn."

3. On September 10, 1986, AFSCo agreed to notify the secured creditor (a lender) but refused to notify vendors. Wagner and Jay Lieberman, the Deloitte partner having responsibility for AFSCo as a client stated that "they did not believe it would be acceptable to leave the vendors without notification."

4. In a written confidential memo, Wagner stated that Deloitte "must withdraw their opinion, . . . and 'send a letter to the

██ In general, "accountants' liability to third parties should be determined under the accepted principles of Wisconsin negligence law."[17] In the context of negligent misrepresentation, Wisconsin law defines a failure to exercise ordinary care as either (1) "mak[ing] misrepresentation under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such misrepresentation will subject the interests of another person to an unreasonable risk of damage,"[18] or (2) failing to use "the care that is usually exercised by persons of ordinary intelligence and prudence engaged in a like kind of business or profession," a standard that is applied to a "person in a particular business or profession."[19]

vendors or creditors that we know have received the financial statements telling them that . . . the opinion should no longer be relied upon.' "

5. Wagner and Pennow told Mannix that they could determine the major creditors, but not specifically who had received copies of the financial statements.

6. The address of Chevron was contained in the work papers of Deloitte.

[17]*Citizens State Bank v. Timm, Schmidt & Co., S.C.,* 113 Wis. 2d 376, 386, 335 N.W.2d 361, 366 (1983), *cited with approval in Brooks v. Bank of Wisconsin Dells,* 161 Wis. 2d 39, 48, 467 N.W.2d 187, 190-91 (Ct. App. 1991) (Rationale that parties injured by negligent provision of professional services may sue the professional regardless of privity applies equally to accountants, attorneys, and trustees.).

[18]Wis J I—Civil 2403. This language follows *Osborne v. Montgomery,* 203 Wis. 223, 242, 234 N.W. 372, 379 (1931), *cited with approval in Schuldies v. Service Machine Co., Inc.,* 448 F. Supp. 1196, 1199 (E.D. Wis. 1978). *See also* Wis J I—Civil 1005.

[19]Wis J I—Civil 2403. *See Marolla v. American Family Mut.*

Under either standard, Deloitte's conduct falls short. At the summary judgment hearing, the trial court had in fact already held, using the foreseeability standard applied to "a person of ordinary intelligence and prudence," that:

> Statements made by [Deloitte's] own employees indicate that [Deloitte] was aware that creditors were relying on these statements. On the undisputed facts in this case, plaintiffs, as major trade creditors, were persons whose reliance on the 1985 opinion and 1985 financial statements was reasonably foreseeable at the time the error was discovered by [Deloitte].

Again, we agree. Clearly, if Deloitte's employees were already "aware that creditors were relying on [Deloitte's] statements" they could also "foresee" such reliance.[20] Alternatively, but equally clearly, "the care that is usually exercised by persons of ordinary intelligence and prudence engaged in a like kind of business or profession" encompasses knowledge of and obedience to the Wisconsin Administrative Code. The Wisconsin Administrative Code states that the confidentiality normally required of professionals does not prohibit disclosure of subsequently discovered facts:

---

*Ins. Co.*, 38 Wis. 2d 539, 546, 157 N.W.2d 674, 678 (1968) ("The test in the case at bar was not what the ordinary prudent man would do if he were driving a track car but what the ordinary prudent man would do if he were an average or ordinary track car driver.").

[20]During the early phases of the interaction between Deloitte and AFSCo, Deloitte's employees made statements to the effect that "vendors whom they knew" were relying on the statements should be notified or that "they could determine the major creditors." *See supra* note 16 (excerpt from enumeration of undisputed facts by trial court), points 2–5.

The prohibition against disclosure of confidential information obtained in the course of a professional engagement does not apply to disclosure of such information when required to properly discharge the certified public accountant's or public accountant's responsibility according to the profession's standards. The prohibition would not apply, for example, to disclosure, as required by section 561 of Statement on Auditing Standards No. 1, of subsequent discovery of facts existing at the date of the auditor's report which would have affected the auditor's report had he been aware of such facts.[21]

On appeal, the parties' and *amicus curiae* briefs have presented extensive argument on the duty of accountants following a subsequent discovery of facts that would have altered an earlier audit report. Much of this argument has focused upon a professional standard[22] promulgated for the guidance of auditors throughout the nation, which purportedly differentiates duties of accountants when clients cooperate in, or resist, disclosure of previously unreported facts. This professional standard provides the following directions to auditors.

When the auditor has concluded, after considering [that his report would have been affected if the undisclosed information had been known to him and that there are *"persons currently relying or likely to rely on the financial statements"*[23]], that action should be taken to prevent future reliance on his

---

[21]Wis. Adm. Code sec. Accy 1.301(4)(a) (effective January 1, 1975).

[22]American Institute of Certified Public Accountants, Statement on Auditing Procedure No. 1, AU § 561, Subsequent Discovery of Facts Existing at the Date of the Auditor's Report, (1972) (hereinafter AU § 561).

[23]AU § 561.05(a) & (b) (emphasis added).

report, he should advise his client to make appropriate disclosure of the newly discovered facts and their impact on the financial statements to *persons who are known* to be currently relying or who are likely to rely on the financial statements and the related auditor's report. When the client undertakes to make appropriate disclosure, the method used and the disclosure made will depend on the circumstances.

. . ..

. . . [W]hen it appears that [revision of the statements will cause delay] appropriate disclosure would consist of notification by the client to *persons who are known to be relying or who are likely to rely* on the financial statements and the related report that they should not be relied upon, and that revised financial statements and auditor's report will be issued upon completion of an investigation.[24]

Significantly, AU § 561 also directs the auditor with a cooperating client to "satisfy himself that the client has made the disclosures specified."[25] However, when the client is not cooperative, AU § 561 provides the following directions:

If the client refuses to make the disclosures specified in paragraph .06, the auditor should notify each member of the board of directors of such refusal and of the fact that, in the absence of disclosure by the client, the auditor will take steps as outlined below to prevent future reliance upon his report. The steps that can appropriately be taken will depend upon the degree of certainty of the auditor's knowledge that there are *persons who are currently relying or who will rely* on the financial statements and the auditor's report, and who would attach importance to the information, and the auditor's ability as a practical

---

[24]AU § 561.06 (emphasis added).
[25]AU § 561.07.

matter to communicate with them. Unless the auditor's attorney recommends a different course of action, the auditor should take the following steps to the extent applicable:

. . ..

 c. Notification to *each person known to the auditor to be relying* on the financial statements that his report should no longer be relied upon.[26]

■

The Wisconsin legislature has considered the possibility of adoption of "standards established by technical societies and organizations of recognized national standing"[27] and provided procedural safeguards when such an adoption occurs.[28] We note that sec. Accy 1.301(4)(a)[29]

---

[26]AU § 561.08 (emphasis added).

[27]Section 227.21(2)(a), Stats.

[28]For example, the following are generally required for an incorporation by reference of a professional standard into the Wisconsin Administrative Code as an administrative rule: (1) there must be a reference to a specific issue or issues of the publication containing the standard, sec. 227.21(2)(a), Stats.; (2) both the revisor of statutes and the attorney general must consent, sec. 227.21(2)(b), Stats.; (3) the rule must state how the incorporated material may be obtained, *id.;* (4) the rule must state that the standard is on file at the offices of the agency, the secretary of state, and the revisor, *id. See, e.g.,* Wis. Adm. Code secs. Ag. 17.04(5)(c) (incorporation of *The Merk Index,* 10th Ed., 1983; Ag. 20.01 (incorporation of *Rules for Testing Seed,* October 1988); HSS 145.20 (incorporation of *Sexually Transmitted Disease Treatment Guidelines,* 1982); ILHR 51.25 (incorporation of numerous standards pertaining to construction materials). There is no specification of a specific publication issue for AU § 561, neither the revisor of statutes nor the attorney general has given consent to the adoption of AU § 561, there is no information on how the public may obtain the document, and no copies are on file in the required offices.

makes specific reference to AU § 561, but does not differentiate between situations of client cooperation or non-cooperation, and thus substantially and intentionally departs from the provisions of AU § 561. This court holds that Accy 1.301(4)(a) is dispositive: *regardless* of the attitudes or actions of their clients, Wisconsin accountants may not use "disclosure of confidential information" as an excuse for their own failure to correct audit reports generated prior to discovery of facts existing at the date of the subject report.

Thus, based upon the correct law and the undisputed facts as presented at the time of the summary judgment hearing, it would have been correct for the trial court to have granted summary judgment at the time requested. We are reluctant to categorize this decision as clear error on the part of the trial court. We note that at this hearing, the trial court had excluded certain of defendant's materials, i.e., those which had not been submitted in a timely matter, and also that at the post-verdict motion hearing, the trial court observed that "[t]he defendant has failed to identify any element of the negligent misrepresentation claim that remained for determination by the jury." Thus, we view the decision to go forward with trial, rather than dispose of the mat-

---

The Accounting Examining Board is specifically prohibited from adopting a "standard or rule relating to professional conduct or unethical practice" until a public hearing on the standard (i.e., AU § 561) or rule (i.e., sec. Accy 1.301(4)(a)) has been held. Section 442.01(2), Stats. While the records of the Accounting Examining Board show that public hearings were held during the promulgation of sections Accy 1.201 through 1.301, there is no record of a public hearing on the adoption (by incorporation by reference or by any non-statutory procedure) on the adoption of AU § 561.

[29]The full text of this section was quoted *supra* at note 21.

ter at summary judgment, pursuant to sec. 802.08, Stats., "in light of the underlying aims and philosophy of Wisconsin's liberal civil procedure rules,"[30] which require our courts to balance the need for a just determination against the need for a speedy and inexpensive determination in legal proceedings.[31] However, the decision to proceed with trial does not preclude the trial court's subsequent decision that the defense had, in fact, failed to introduce evidence at trial that contradicted Chevron's assertions and proof.

We now turn to the damage award. Question 17 of the special verdict reads as follows: "If your answer to Question No. 16 [determination of Deloitte's negligent misrepresentation] is yes, then answer this question: What sum of money will fairly and reasonably compensate Chevron for damages sustained as a result of [Deloitte's] failure to notify it of the withdrawal of their opinion on AFSCo's 1985 financial statements?" Chevron moved the trial court to change the answer of question number 17 from the jury's "N/A" to $1,646,106, pursuant to sec. 805.14, Stats.,[32] and to enter judgment accordingly. This the trial court did. We reverse this part of the trial court's order because the original motion was improper, and the trial court's subsequent response was incorrect.

A party may move the court to change an answer in the verdict, pursuant to sec. 805.14(5)(c), Stats., but only on the grounds that there was insufficient evidence to sustain the original answer. In this case, the jury's answer to the negligent misrepresentation damages ques-

---

[30]*Korkow v. General Cas. Co. of Wisconsin,* 117 Wis. 2d 187, 192, 344 N.W.2d 108, 111 (1984).

[31]*See* sec. 801.01(2), Stats.

[32]No subsection specified in the motion.

tion indicated that they had not considered the evidence, based upon the jury's correct interpretation of the written instructions in the preface to the question. Having found that Deloitte was not "negligent in failing to notify Chevron of the withdrawal of its opinion,"[33] the jury did not determine the potential amount of damages and therefore entered "N/A" on the special verdict form. The decision by the jury not to provide *any* answer to the question precludes a subsequent determination by the court that there was an "insufficiency of the evidence to sustain the answer."[34]

■■■■■■

The final issue is the total amount of money owed to Chevron by AFSCo, which was disputed at trial. Chevron presented evidence that over $1,646,000 was owed to them by AFSCo. This amount included "invoice for carry-over inventory" ($188,932) and "interest" ($676,106) and excluded credits for amounts paid by AFSCo in bankruptcy ($170,630) and "net unapplied credits" ($31,577). The jury heard testimony that placed various sums of money at issue. First, there was the application of $240,000 paid to Chevron by AFSCo, which was characterized by Deloitte as payments on account and by Chevron as cash on delivery sales, occurring after Chevron ceased credit shipments. Next, there was a dispute over the shipment of a single truckload of material. Finally, there was conflicting evidence on AFSCo's agreement to pay an annual eighteen percent interest on the unpaid balance. Where issues of material fact are heard by a jury acting in the capacity of factfinder, the trial court may not substitute its own determination for that of the jury on post-verdict motions.[35]

---

[33]Special verdict question 16.

[34]Section 805.14(5)(c), Stats.

[35]*See Chart v. General Motors Corp.*, 80 Wis. 2d 91, 110–14,

Furthermore, in view of the conflicting evidence presented at trial, the damages in this tort action may not be said to be "reasonably certain" prior to judgment.[36] Where there is a genuine dispute throughout the trial over the amount of damages, as here, an award of prejudgment interest is not appropriate.[37] The damages in this case will not be liquidated until verdict approval or judicial decision.[38] We reverse the order of the trial court changing the jury's answer to special verdict question number 17 from "N/A" to $1,646,106 and remand the cause for determination of the amount of damages owed to Chevron by AFSCo.

Because the trial court was correct in finding for Chevron on the issue of negligent misrepresentation, and because this cause must now be remanded to the trial court for the determination of damages we need not address the issues of intentional misrepresentation or sanction for attorney misconduct.[39]

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.

---

258 N.W.2d 680, 688–89 (1977) (After trial court entered judgment for two defendants notwithstanding the verdict, it was improper speculation for trial court to re-assign to other parties the percentage of negligence attributed by jury to those defendants.).

[36]*D'Huyvetter v. A.O. Smith Harvestore Products,* 164 Wis. 2d 306, 324, 475 N.W.2d 587, 593–94 (Ct. App. 1991), *review dismissed,* 475 N.W.2d 585 (1991).

[37]*Id.* at 325, 475 N.W.2d at 594.

[38]*Allstate Ins. Co. v. Truck Ins. Exchange,* 63 Wis. 2d 148, 164, 216 N.W.2d 205, 213 (1974) *overruled on other grounds by Lawver v. Boling,* 71 Wis. 2d 408, 238 N.W.2d 514 (1976).

[39]*See Michalik v. Michalik,* 164 Wis. 2d 544, 558 n.8, 476 N.W.2d 586, 593 n.8 (Ct. App. 1991) (citing with approval *Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938)).

FINE, J. *(dissenting)*. The jury found that Deloitte & Touche was not guilty of either intentional or negligent misrepresentation. Despite the unusual procedural posture of this case, the basic issue on appeal is whether there is sufficient evidence to support these determinations. Our standard of review is clear. Neither the trial court nor we may overturn a jury's verdict "if there is any credible evidence" in the record to support it. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984). Since I believe that there is credible evidence that Deloitte & Touche did not breach any legal duty to Chevron, I must dissent.

The torts of intentional and negligent misrepresentation share three common elements: "(1) The representation must be of a fact and made by the defendant; (2) the representation of fact must be untrue; and (3) the plaintiff must believe such representation to be true and rely thereon to his damage." *Whipp v. Iverson,* 43 Wis. 2d 166, 169, 168 N.W.2d 201, 203 (1969). The tort of intentional misrepresentation requires two additional elements: (1) "the defendant must either know the representation is untrue or the representation was made recklessly without caring whether it was true or false"; and (2) the defendant must have made the representation "with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage." *Ibid.* Negligent misrepresentation, on the other hand, adds the following to the three core elements of "misrepresentation": (1) the defendant must have had either a legally-imposed "duty of care or a voluntary assumption of a duty"; and (2) the defendant must have failed "to exercise ordinary care" either in making the representation or in ascertaining the underlying fact. *Id.,* 43 Wis. 2d at 170, 168 N.W.2d at 204. Silence, in the face of a duty to

343

disclose, can be as much a misrepresentation as an assertion:

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, *if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.*

RESTATEMENT (SECOND) OF TORTS § 551(1) (emphasis added); *see also Ollerman v. O'Rourke Co.,* 94 Wis. 2d 17, 26, 288 N.W.2d 95, 99–100 (1980). The crux of this case is thus whether Deloitte & Touche had a duty to disclose to Chevron the problems with American Fuel & Supply Company's 1985 financial statements. This issue is a question of law that we determine *de novo. See id.,* 94 Wis. 2d at 27, 288 N.W.2d at 100.

In Wisconsin, "duty" is an element of negligence. *A.E. Inv. Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 484, 214 N.W.2d 764, 767 (1974). Under ordinary tort law "[a] defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone," and, if negligent, a defendant is "liable for unforeseeable consequences" and to "unforeseeable plaintiffs." *Id.,* 62 Wis. 2d at 484, 214 N.W.2d at 766. Here, however, we are concerned with professional malpractice, a species of tort law where this state has long recognized that the parameters of duty, the breach of which is negligence and can subject the professional to civil liability, are best set by the particular profession.[1] The majority ignores this long-standing

---

[1]*See Helmbrecht v. St. Paul Ins. Co.,* 122 Wis. 2d 94, 111–112, 362 N.W.2d 118, 128 (1985) (An attorney has a duty to

principle.

Absent some compelling interest that the majority opinion does not articulate, and absent legislative action, accountants, like the other professions, should be permitted to determine the appropriate standards of care applicable to their profession; as with the other professions, they are best able to appreciate the ramifications of any legal principle that has the potential to impose on them civil liability.

The Accounting Examining Board has adopted the following rule:

> The prohibition against disclosure of confidential information obtained in the course of a professional engagement does not apply to disclosure of such

---

" 'use a reasonable degree of care and skill, and to possess to a reasonable extent the knowledge requisite to a proper performance of the duties of his profession . . .' [and to do what] a reasonable or prudent attorney [would] have done in the same circumstance.") (quoting *Malone v. Gerth,* 100 Wis. 166, 173, 75 N.W. 972, 974 (1898)); *A.E. Inv. Corp.,* 62 Wis. 2d at 489, 214 N.W.2d at 769 ("An architect has the duty of using the standard of care ordinarily exercised by the members of that profession."); *Shier v. Freedman,* 58 Wis. 2d 269, 283–284, 206 N.W.2d 166, 174 (1973), *modified,* 58 Wis. 2d 285, 208 N.W.2d 328 (1973) (Physician has duty to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances."); *Barnes v. Lozoff,* 20 Wis. 2d 644, 650, 123 N.W.2d 543, 546 (1963) ("An engineer is not required by the standards of his profession to conduct a title search on property which his client represents to be his own."). *Cf.* sec. 227.21(2)(a), Stats. (Administrative agencies may "adopt standards established by technical societies and organizations of recognized national standing . . ..") (Agency rules may, "with the consent of the revisor and the attorney general" incorporate those standards in agency rules by reference. Section 227.21(2)(a), Stats.).

*information when required to properly discharge the certified public accountant's or public accountant's responsibility according to the profession's standards. The prohibition would not apply, for example, to disclosure, as required by section 561 of Statement on Auditing Standards No. 1, of subsequent discovery of facts existing at the date of the auditor's report which would have affected the auditor's report had he been aware of such facts.*

Wis. Admin. Code sec. Accy 1.301(4)(a) (emphasis added).

Section 561 of Statement on Auditing Standards No. 1 makes a distinction between an accountant's responsibility under two different scenarios: first, where the client co-operates; second, where the client does not co-operate. Where the client co-operates, the correction should be issued to all those persons whom the accountant knows are either "currently relying or who are *likely to rely*" on the inaccurate statements. Section 561.06 (emphasis added). Where the client will not co-operate, the correction should be issued "to each person *known* to the auditor to be relying on the [inaccurate] financial statements." Section 561.08(c) (emphasis added). If the client does not cooperate, section 561.08 specifically notes: "The steps that can appropriately be taken will depend upon the degree of certainty of the auditor's knowledge that there are persons who are currently relying or who will rely on the [inaccurate] financial statements." Mere "foreseeability," however, is not enough.[2]

---

[2]The trial court specifically rejected Deloitte & Touche's requested jury instruction patterned on section 561.08(c). Nevertheless, the trial court did instruct the jury that: "A person in a particular business or profession owes a duty to exercise the care that is usually exercised by persons of ordinary intelligence and prudence engaged in a like kind of business or profession."

The majority opinion rejects section 561's sensitive balance in favor of naked "foreseeability" as the universal test to determine whether a client's confidential information must be disclosed over the client's objection.[3] As a practical result, the majority's decision, by imposing a duty to disclose if *any* harm is "foreseeable," will henceforth require the disclosure of confidential financial data over the client's objection to all persons (perhaps even the world at large) who are, in fact, *not* relying on an earlier financial statement, and who will not be harmed by any failure to disclose.[4] Unfortunately, the majority advances no rationale for this extreme result other than its own *ipse dixit,* and I perceive none. All section 561 requires is that the accountant take reasonable steps to ascertain the identity of persons who are, in fact, relying on the now-incorrect or misleading

---

[3]*Citizens State Bank v. Timm, Schmidt & Co.,* 113 Wis. 2d 376, 335 N.W.2d 361 (1983), concerned the liability of negligent accountants to those with whom they were not in privity. The court decreed: "Liability will be imposed on these accountants for the foreseeable injuries resulting from their negligent acts unless, under the facts of this particular case, as a matter of policy to be decided by the court, recovery is denied on the grounds of public policy." *Id.,* 113 Wis. 2d at 386, 335 N.W.2d at 366. Thus, "foreseeability," as that term is used in *Timm, Schmidt,* refers to the causation prong of a tort claim rather than, as it is used here, the negligence prong. Stated another way, the majority here uses "foreseeability" to impose a "duty" upon accountants to disclose confidential client information over the client's objection, and holds that a breach of that duty is negligence. In *Timm, Schmidt,* on the other hand, negligence by the accountants was assumed. *Ibid.*

[4]Here, for example, there is evidence in the record that Chevron relied, at least to some degree, on security provided by the personal guarantee executed by American Fuel & Supply Company's sole shareholder.

financial statements, or who will, at some later time, rely on those statements, and notify those persons; the threat of civil liability should not require more. The majority's decision goes too far.

Although there is evidence in the record that would have supported a jury's finding that Deloitte & Touche knew that Chevron was relying on the inaccurate financial statements, there is also evidence to the contrary. Additionally, there is no evidence that would support a finding that Deloitte & Touche had the "intent to deceive" Chevron, and "induce" Chevron to act upon the inaccurate 1985 financial statements to Chevron's "pecuniary damage," all of which is a prerequisite to imposition of liability for intentional misrepresentation. *See Whipp,* 43 Wis. 2d at 169, 68 N.W.2d at 203. Accordingly, under our standard of review, we must reverse.