CITIZENS STATE BANK, Plaintiff-Appellant-Petitioner,

v.

TIMM, SCHMIDT & Co., S.C. and General Casualty Co. of Wisconsin, Defendants-Respondents.

Supreme Court

*No. 81–801.   Argued April 26, 1983.—Decided July 1, 1983.*

(Also reported in 335 N.W.2d 361.)

For the petitioner there were briefs by *John S. (Jack) Bartholomew* and *Bartholomew & Greenhill,* Shawano, and oral argument by *John S. Bartholomew.*

For the defendants-respondents there was a brief by *Henry A. Field, Jr., Rebecca Erhardt* and *Boardman, Suhr, Curry & Field,* Madison, and oral argument by *Ms. Erhardt.*

DAY, J.  This is a review of an unpublished decision of the court of appeals which affirmed a judgment and order of the Circuit Court for Portage County, Honorable Fred A. Fink, Judge.  The judgment granted the respondents', Timm, Schmidt & Company and General Casualty Company, (hereinafter Timm) motion for summary judgment dismissing Citizens State Bank (hereinafter Citizens) negligence cause of action[1] in this accountant malpractice case.  The order denied Citizens' motions for leave to file a supplemental affidavit and for reconsideration.

The issue considered on review is:  May an accountant be held liable for the negligent preparation of an audit report to a third party not in privity who relies on the report?

We conclude that an accountant may be held liable to a third party not in privity for the negligent preparation of an audit report under the principles of Wisconsin negligence law.  We also conclude that the information in the record raises a material issue of fact so that the summary judgment motion was improperly granted.  We reverse the decision of the court of appeals and remand the case to the trial court for a trial on the negligence cause of action.

From the record, the following facts appear to be undisputed.

---

[1] Citizens also brought an action alleging the financial statements at issue here had been prepared in a reckless manner.  That cause of action was not dismissed.  The court of appeals granted Citizens leave to file a discretionary appeal to challenge the dismissal of the negligence cause of action.

Timm is an accounting firm in Stevens Point. For the years 1973–1976, Timm employees prepared financial statements for Clintonville Fire Apparatus, Inc. (hereinafter CFA). These financial statements included: a comparative statement of financial condition, a statement of yearly income, a statement of retained income and a statement of changes in financial position. In addition, for each year except 1973,[2] Timm sent an opinion letter to CFA which stated that the financial statements fairly presented the financial condition of CFA and that the statements were prepared in accordance with generally accepted accounting principles.

In November, 1975, CFA obtained a $300,000 loan from Citizens. The loan was guaranteed by the Small Business Administration, a federal agency (hereinafter SBA). Citizens made the loan to CFA after reviewing the financial statements which Timm had prepared. Additional loans, apparently not SBA guaranteed, were made by Citizens to CFA in 1976. By the end of 1976, CFA had a total outstanding indebtedness to Citizens of approximately $380,000.

In early 1977, during the course of preparing CFA's financial statement for 1976, Timm employees discovered that the 1974 and 1975 financial statements contained a number of material errors totalling over $400,000, once all period adjustments were made.

Once these errors were corrected and Citizens, as a creditor of CFA, was informed by Timm of the errors, Citizens called all of its loans due. As a result, CFA went into receivership and was ultimately liquidated and

---

[2] Timm was hired by CFA to do accounting work sometime in 1973. The record does not disclose when. Consequently, since Timm was not CFA's accountant beginning on January 1, 1973, Timm refused to express an opinion on the "statements of income and retained earnings and changes in financial position for the year ended December 31, 1973."

dissolved. As of the date the complaint was filed, the amount outstanding on Citizens' loans to CFA was $152,214.44.

Citizens filed an action against Timm and its malpractice insurance company on September 14, 1979, seeking to recover $152,214.44, the amount due on its loans to CFA.

Timm answered in October, 1979. On March 25, 1980, Timm filed a motion for summary judgment on the grounds that the pleadings and affidavits it submitted with its motion raised no issue of material fact and showed Timm was entitled to judgment as a matter of law. The affidavits submitted with the motion came from every member of the Timm firm who had worked on the CFA account. Each affidavit stated that the affiant had no knowledge, until after the fact, that CFA intended to or had obtained any loans from Citizens. The affidavit of Elmer Timm, president of the firm, also stated that he was never informed by any person that any audit report prepared by his firm for CFA would be used by any lender for the purpose of determining whether or not to make a loan to CFA.

Citizens submitted a number of affidavits in opposition to the motion for summary judgment. The affidavit of Den E. Hood, a certified public accountant, stated that he had examined the audit procedures used by Timm employees in preparing the 1974 and 1975 financial reports. Hood concluded after examining the procedures that the audit examinations had not been conducted in accordance with generally accepted auditing standards. He also concluded that had such standards been complied with, the material errors in the 1974 and 1975 statements should have been discovered and corrected prior to the issuance of each statement.

Citizens also submitted affidavits from its president, Gerald Beier, and a transcript of part of a deposition

taken from Elmer Timm. Beier's affidavit contains a reference to a letter in Citizens' files from an employee of SBA "which indicated that they were waiting for more financial information from the accountants for CFA before approving and guaranteeing the loan to CFA, which was ultimately made by [Citizens'] in November of 1975." Beier also stated that Citizens' loans to CFA were made in reliance upon financial statements which had been prepared by Timm. The Elmer Timm deposition includes testimony showing that he knew the audited statement his firm prepared for CFA for the year ending in 1974 would be used by CFA to receive a guarantee on a loan through SBA. In the deposition however, there is a statement suggesting that he misspoke and actually intended to refer to the statement his firm had prepared for the year ending December 31, 1973, instead of 1974.[3]

Citizens also filed two affidavits from John Dando, CFA's president. The first was filed on October 8, 1980 and was considered by the trial judge in his original decision. That affidavit recited that Dando believed Timm was aware that statements its employees prepared would be submitted to SBA and that audited statements were a requirement of SBA loans.

Dando's second affidavit was not filed until October 28, 1980.[4] Although the trial court in its decision did not

---

[3] The deposition is very vague on this point. In his later statement, all Timm stated was that the first date on which Mr. Dando, CFA's President, had requested an audited financial statement was in 1973 and not 1974. He then stated that his testimony in all other respects remained the same which could be interpreted as meaning that Timm did know that the 1974 statement was the one CFA intended to use for purposes of a loan.

[4] Citizens' attorney, Jack Bartholomew, filed a motion on October 16, 1980, for leave to file a supplementary affidavit. As the basis for this request, Bartholomew noted that he had been seeking diligently to obtain a more specific affidavit from Dando but

consider this affidavit and also refused to grant Citizens' motions for leave to file this affidavit, the trial court in its decision on the motion for reconsideration stated that it would consider the affidavit. Therefore the October 28, 1980 affidavit is part of the record before this Court.

In that affidavit, Dando stated that Timm was "told that as soon as the third quarter [1975] statement was finished, it would be personally picked up at [Timm's] office and taken directly to Citizens State Bank in order to expedite the loan application."

Based upon all of the affidavits except Dando's supplemental October 28, 1980 one, the trial court granted Timm's motion for summary judgment. The court concluded that under the Restatement of Torts (2d) section 552,[5] accountants may be held liable to third parties for

had been unable to do so because of Dando's unavailability, and his own lack of knowledge as to Dando's location. In Citizens' renewed motion for leave to file a supplementary affidavit which was filed after the trial court's decision, Bartholomew explained that he could not reach Dando earlier for a supplemental affidavit because Dando was an adverse party in another lawsuit and neither Dando nor his attorney would disclose Dando's location until after an October 14, 1980 hearing in that lawsuit.

[5] *Restatement of Torts, (2d)*, section 552 (1977) (hereinafter Restatement) reads as follows:

"552. *Information Negligently Supplied for the Guidance of Others.*

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

their negligent acts. However, the judge also concluded that, based upon the affidavits before him, the Restatement did not extend Timm's liability to Citizens.

Citizens moved for reconsideration of this decision. The trial court denied this motion. In its decision on reconsideration, the trial court reviewed the Dando affidavit of October 28, 1980, but determined that it contained only "conclusionary facts" and thus was not sufficient to raise an issue of fact so that summary judgment would be inappropriate.

Citizens appealed. The court of appeals affirmed the trial court. It concluded that, even assuming that section 552 of the Restatement should be the law in this state, there was still no genuine issue of fact as to whether Citizens was within the class protected by its provisions. Therefore, the court of appeals concluded summary judgment was properly granted.

The question on review is whether accountants may be held liable for the negligent preparation of an audit report to a third party not in privity who relies on the report.

This is a question of first impression in this state. However, the issue has received wide consideration in both courts[6] and law journals.[7]

---

"(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."

[6] *See* cases collected in Annot., *Liability of Public Accountant To Third Parties*, 46 ALR3d 979.

[7] Wiener, *Common Law Liability of the Certified Public Accountant For Negligent Misrepresentation* (hereinafter Wiener) 20 San Diego L Rev 233 (1983) ; Mess, *Accountants and the Common Law: Liability to Third Parties*, 52 Notre Dame Lawyer 838 (1977) ; Stern, *Accountant's Liability to Third Parties*, 17 Cleveland-Marshall L Rev 490 (1968).

Accountants have long been held not liable for their negligence to relying third parties not in privity under an application of Judge Cardozo's decision in *Ultramares v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931). In *Ultramares,* Judge Cardozo absolved the defendant accountants from liability for overvaluing the assets of a company in an audit report to a plaintiff who had loaned money in reliance on a certified balance sheet in the report. Judge Cardozo expressed the concern that "if liability exists, a thoughtless slip or blunder . . . may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class." 174 N.E. at 444.

According to Associate Justice Howard Wiener of the California Court of Appeals, *Ultramares* was relied on by every jurisdiction to consider this question to deny accountant liability to third parties.[8] However, in recent years, *Ultramares* has received new attention and courts have started to find accountants liable to third parties.

In *Rusch Factors, Inc. v. Levin,* 284 F. Supp. 85 (D.C. RI 1968), the court, citing section 552 of the Restatement, imposed liability on an accountant to a relying third party not in privity. In *Rusch Factors,* the accountant knew the statements he prepared were to be used by his client for the purpose of obtaining credit from a third party even though they did not know of the specific relying third party. Nevertheless, the court allowed liability to be imposed. 284 F. Supp. at 93.

Similarly, in *Ryan v. Kanne,* 170 N.W.2d 395 (Iowa 1969), the Iowa Supreme Court applying Restatement section 552, determined that an accountant could be held liable to a foreseen third party who had relied upon

---

[8] *Wiener,* 20 San Diego L. Rev. at 236; Also *see Accountant's Liability For Compilation and Review Engagements,* (hereinafter *Accountant's Liability*), 60 Texas L. Rev. 759, 772 (1982).

a negligently prepared audit report. Because the relying third party was "actually known," the court did not address the extent of foreseeability that would be necessary before an accountant could be held liable to a third party not actually known. 170 N.W.2d at 403.

In this state, although the liability of accountants to third parties not in privity has not been examined, the liability of an attorney to one not in privity was recently examined in *Auric v. Continental Casualty Co.*, 111 Wis. 2d 507, 331 N.W.2d 325 (1983). This court concluded that an attorney may be held liable to a will beneficiary not in privity for the attorney's negligence in supervising the execution of a will. 111 Wis. 2d at 514. Part of the rationale for this decision[9] was that the imposition of liability would make attorneys more careful in the execution of their responsibilities to their clients. 111 Wis. 2d at 513.

That rationale is applicable here. Unless liability is imposed, third parties who rely upon the accuracy of the financial statements will not be protected.[10] Unless an accountant can be held liable to a relying third party, this negligence will go undeterred.

There are additional policy reasons to allow the imposition of liability. If relying third parties, such as creditors, are not allowed to recover, the cost of credit to the general public will increase because creditors will either have to absorb the costs of bad loans made in reliance on faulty information or hire independent accountants to verify the information received. Accountants may spread the risk through the use of liability insurance.

[9] In *Auric* the court also relied upon the strong public policy in this state supporting the right of a testator to be as free as possible in disposing of his property at death. 111 Wis. 2d at 513.

[10] As one law review writer noted, "Arguably, the primary intended user for most reviewed financial statements is a third party." *Accountant's Liability*, 60 Texas L. Rev. at 813.

We conclude that the absence of privity alone should not bar negligence actions by relying third parties against accountants.

Although the absence of privity does not bar this action, the question remains as to the extent of an accountant's liability to injured third parties. Courts which have examined this question have generally relied upon section 552 of the Restatement to restrict the class of third persons who could sue accountants for their negligent acts. Under section 552(2)(a) and (b), liability is limited to loss suffered:

"(a) By the person or one of a limited group of persons for whose benefit and guidance he [in this case the accountant] intends to supply the information or knows the recipient intends to supply it; and

"(b) Through reliance upon it in a transaction that he [the accountant] intends the information to influence or knows the recipient so intends or in a substantially similar transaction."

Under section 552, liability is not extended to all parties whom the accountant might reasonably foresee as using the information.[11] Rather, as one commentator noted, "The Restatement's formulation of 'a limited group of persons' extends causes of action to a limited number of third parties who are expected to gain access to the financial statement information in an expected transaction."[12] This limitation is stressed in comment h. to section 552 where it is noted that:

"It is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, dis-

[11] *Wiener*, 20 San Diego L. Rev. at 247.

[12] *Accountant's Liability*, 60 Texas L. Rev. at 777.

tinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it."

The fundamental principle of Wisconsin negligence law is that a tortfeasor is fully liable for all foreseeable consequences of his act except as those consequences are limited by policy factors. *Osborne v. Montgomery,* 203 Wis. 223, 234 N.W. 372 (1931); *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 240, 55 N.W.2d 29 (1952); *Schilling v. Stockel,* 26 Wis. 2d 525, 531, 133 N.W.2d 335 (1965); *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 485, 214 N.W.2d 764 (1974). The Restatement's statement of limiting liability to certain third parties is too restrictive a statement of policy factors for this Court to adopt.[13]

We conclude that accountants' liability to third parties should be determined under the accepted principles of Wisconsin negligence law. According to these principles, a finding of non-liability will be made only if there is a strong public policy requiring such a finding. *Auric,* 111 Wis. 2d at 512; *A.E. Investment,* 62 Wis. 2d at 485; *Ollerman v. O'Rourke Co.,* 94 Wis. 2d 17, 47, 288 N.W. 2d 95 (1980). Liability will be imposed on these accountants for the foreseeable injuries resulting from their negligent acts unless, under the facts of this particular case, as a matter of policy to be decided by the court, recovery is denied on grounds of public policy. *See, H. Rosenblum, Inc. v. Jack F. Adler,* —— N.J. ——, 461 A2d 138 (1983).[14] This Court has set out a number

---

[13] *Wiener,* 20 San Diego L. Rev. at 257.

[14] In *Rosenblum,* the New Jersey Supreme Court determined on appeal from a motion for partial summary judgment that public policy did not preclude the imposition of liability to third parties not in privity on accountants.

of public policy reasons for not imposing liability despite a finding of negligence causing injury:

"(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appeals too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point." *Ollerman,* 94 Wis. 2d at 48; *Morgan v. Pennsylvania Gen'l. Ins. Co.,* 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979); *Stewart v. Wulf,* 85 Wis. 2d 461, 479, 271 N.W.2d 79 (1978); *Coffey v. Milwaukee,* 74 Wis. 2d 526, 541, 274 N.W.2d 132 (1976).

Although in some cases this court has decided at the motion-to-dismiss stage that policy factors preclude the imposition of liability for negligent acts, *Hass v. Chicago & North Western Railway Co.,* 48 Wis. 2d 321, 327, 179 N.W.2d 885 (1970), it has generally been found to be better practice to have a full factual resolution before evaluating the public policy considerations involved. *Ollerman,* 94 Wis. 2d at 51; *Morgan,* 87 Wis. 2d at 738; *Coffey,* 74 Wis. 2d at 543; *Padilla v. Bydalek,* 56 Wis. 2d 772, 780, 203 N.W.2d 15 (1973).

In this case we conclude that a determination of the public policy questions should be made after the facts of this case have been fully explored at trial. The question of the proper scope of these accountants' liabilities to the third party bank cannot be determined upon the information contained in the record. A full factual resolution is necessary before it can be said that public policy precludes Timm's liability for its allegedly negligent conduct.

The pleadings, affidavits and other information in the record before this court do not establish that Timm was entitled as a matter of law to summary judgment. Under the accepted principles of Wisconsin negligence law, Timm could be liable to Citizens if Timm's actions were the cause of Citizens' injuries and if the injuries were reasonably foreseeable unless public policy precluded recovery.

Timm's affidavits do not dispute that Citizens' reliance upon the financial statements led to the making of the loans and ultimately to the losses which were incurred. Each affidavit recites that Timm employees had no knowledge that the financial statements would actually be used by CFA to apply for a new bank loan or to increase existing loan indebtedness. However, the affidavit of Elmer Timm stated that "as a certified public accountant, I know that audited statements are used for many purposes and that it is common for them to be supplied to lenders and creditors, and other persons."

These affidavits and other information contained in the record do not dispose of the issue of whether it was foreseeable that a negligently prepared financial statement could cause harm to Citizens.

Therefore, Timm having failed to establish a *prima facie* case for summary judgment, we conclude the trial judge erred in granting the motion for summary judgment.

*By the Court.*—Decision of the court of appeals is reversed and cause remanded to the trial court for further proceedings not inconsistent with this opinion.