THREE T's TRUCKING, d/b/a Jung Bros. Trucking, and Selective Insurance Company, Plaintiffs-Respondents,

v.

Gerald KOST, Jr., Gerald Kost/Trucksport, Inc., and Progressive Insurance Company, f/k/a ABC Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 2006AP2302. Submitted on briefs May 1, 2007. —Decided May 22, 2007.*

2007 WI App 158

(Also reported in 736 N.W.2d 239.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Rick E. Hills* and *Michelle M. Stoeck* of *Hills Legal Group, Ltd.*, Waukesha.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Patrick W. Brennan* and *Bryan J. Paradise* of *Crivello, Carlson & Mentkowski, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. Gerald Kost, Jr., Gerald Kost/Trucksport, Inc., and its insurer Progressive Insurance Company appeal the trial court's order granting summary judgment to Three T's Trucking, d/b/a Jung Bros. Trucking, and Selective Insurance Com-

pany, which insured Three T's Trucking.[1] The trial court determined that Kost and Progressive had a duty to defend and indemnify Three T's Trucking in connection with an Illinois personal-injury lawsuit, and that the duty was triggered by a letter dated August 15, 2001, from Selective Insurance to Gerald Kost, Jr. The trial court's order awarded $45,228.69 to Three T's Trucking and Selective Insurance "for legal fees and costs incurred" from the August 15, 2001, trigger date. It also appropriately provided that Progressive Insurance's "obligation to indemnify shall be limited to the applicable policy limits."

¶ 2. Kost and Progressive contend that: (1) the August 15, 2001, letter was not a proper tender; (2) Selective Insurance had no standing to sue Kost and Progressive Insurance; (3) the trial court misinterpreted the indemnification agreement; and (4) the trial court erred in not concluding that a $10,666.15 payment made by Progressive Insurance to Selective Insurance was an

---

[1] The order appealed from was entered June 12, 2006. Judgment was granted under that order on September 7, 2006. The notice of appeal was filed by Gerald Kost, Jr., Gerald Kost/Trucksport, Inc., and Progressive Insurance Company on September 18, 2006. Three T's Trucking, d/b/a Jung Bros. Trucking, and Selective Insurance Company do not contend that the June 12 order was not sufficiently "final" to permit an appeal "as a matter of right" under Wis. Stat. § 808.03(1). Giving the order the requisite liberal construction, *see Wambolt v. West Bend Mut. Ins. Co.*, 2007 WI 35, ¶ 4, 299 Wis. 2d 723, 727, 728 N.W.2d 670, 673 ("appellate courts should liberally construe ambiguities to preserve the right of appeal"), we conclude that we have jurisdiction over the appeal.

The trial court's order for judgment asserts that "Progressive Insurance Company" is "properly known as Progressive Northern Insurance Company." With that acknowledgment, we will refer to Progressive as it is styled in the caption.

accord and satisfaction. We agree with the trial court on all of these issues. Accordingly, we affirm.

## I.

¶ 3.   This case arises out of an accident in Illinois. In August of 1999, Mark Hubacher was killed when he was driving a truck that collided with a truck driven by Ace Adkins. A lawsuit was filed in Illinois state court on August 28, 2001, seeking to recover for Hubacher's death. The Illinois complaint alleged, as material to this appeal, that the Adkins truck was owned by Kost and Gerald Kost/Trucksport, and that Adkins was employed by all of the following:   Kost and Gerald Kost/Trucksport, and Three T's Trucking and Jung Bros. Trucking. Again, as material to this appeal, the complaint contended Hubacher's death was caused by the negligence of Adkins, Kost and Gerald Kost/Trucksport, and Three T's Trucking and Jung Bros. Trucking. This appeal concerns the indemnification obligations of Kost to Three T's Trucking and the effect of those obligations on the parties' respective insurers.

¶ 4.   In July of 1999, Three T's Trucking and Kost executed an "Independent Operator Service Contract" under which Kost was to lease to Three T's Trucking "motor carrier equipment." (Uppercasing omitted.) In the agreement, Kost promised to indemnify Three T's Trucking, and, as material, provided that:

- Kost was not "the employee of" Three T's Trucking "for any purpose whatsoever."

- "Neither [Kost] nor the employees, agents or servants of [Kost] are to be considered employees or servants of [Three T's Trucking] at any time, under any circumstances, or for any purpose."

685

- Kost "hereby releases and holds [Three T's Trucking] harmless from any and all claims for damages or causes of action whatsoever arising from any personal injury or property damage suffered by [Kost], its employees or agents, while in or upon [Three T's Trucking] property or while performing services pursuant to this Agreement."

- Kost "further expressly agrees to indemnify and hold [Three T's Trucking] harmless for any loss, damage or expense, including attorney's fees, incurred by [Three T's Trucking], resulting from any acts or omissions by [Kost], its employees or agents, that may arise while [Kost] is operating the leased equipment, whether or not under the specific dispatch of [Three T's Trucking]."

- "Under any of the circumstances where [Three T's Trucking] has the right of indemnification, [Kost] shall be responsible for any and all reasonable sums expended by [Three T's Trucking] in the defense, settlement, or payment of claims."

¶ 5.   Part of the dispute on appeal concerns when Three T's Trucking tendered defense of the Hubacher claim to Kost. When this lawsuit was started in Milwaukee by Three T's Trucking and Selective Insurance seeking a declaration that Kost had to defend and indemnify Three T's Trucking in connection with the Hubacher matter, all the parties apparently believed that Three T's Trucking had tendered its defense of the Hubacher claim to Kost on May 7, 2004. Subsequently, however, Three T's Trucking and Selective Insurance amended its pleadings to assert that the tender was actually made in a letter dated August 15, 2001, from a Selective Insurance "Claims Management Specialist" to Gerald Kost, Jr., which, as material, told Kost:

Selective Insurance has received notice of a loss occurring on 8/31/1999 in which your company was involved. Your driver, Ace E. Adkins, was the driver in the [Hubacher] accident. My insured, Three T's Trucking, was recently contacted by an attorney representing the deceased, Mark D. Hubacher. Attached to this letter are copies of correspondence received [from the firm representing the plaintiff in the Hubacher action], Along [*sic*] with a copy of the Certificate of Insurance my insured had with your company stating you were insured with Progressive Insurance with a combined single limit of $1,000,000.

I am tendering this claim to you at this time for you and your insurance carrier to handle to conclusion.

The trial court determined that this was the tender letter, and granted summary judgment to Three T's Trucking and Selective Insurance, holding that Kost and Progressive were obligated to pay Three T's Trucking's expenses running from that date.

## II.

¶ 6. Our review of a trial court's grant or denial of summary judgment is *de novo. Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). We address, in turn, the contentions asserted on this appeal by Kost and Progressive Insurance.

A. *The tender.*

¶ 7. Kost and Progressive Insurance argue that because the August 15, 2001, letter to Kost from Selective Insurance was to Progressive Insurance's in-

sured rather than to Progressive Insurance, and was also sent before the Illinois action was filed, it was not a valid tender. We disagree.

¶ 8.   Kost undertook in the July 1999 agreement to indemnify and defend Three T's Trucking, and hold Three T's Trucking harmless for, as we have seen, "any loss, damage or expense, including attorney's fees, incurred by [Three T's Trucking], resulting from any acts or omissions by [Kost], its employees or agents, that may arise while [Kost] is operating the leased equipment." Further, Kost promised to "hold[] [Three T's Trucking] harmless from any and all claims for damages or causes of action whatsoever arising from any personal injury or property damage suffered by [Kost], its employees or agents . . . while performing services pursuant to this Agreement." The agreement thus encompasses both "claims for damages" *and* "causes of action." If the two clauses were synonymous, one would be surplusage, and we generally construe contracts to avoid that result. *See 1325 North Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI 94, ¶ 56, 293 Wis. 2d 410, 442, 716 N.W.2d 822, 838 (recognizing the " 'established rule that a contract is to be construed so as to give a reasonable meaning to each provision of the contract, and that courts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage' ") (quoted source omitted). Further, Kost's undertaking to hold Three T's Trucking harmless for "any loss" "or expense, including attorney's fees" that Three T's Trucking had as a result of anything done by Kost's "employees . . . while [Kost] is operating the leased equipment" is not restricted to losses, expenses, or attorney's fees incurred after the filing of a lawsuit.

¶ 9. As we have already seen, Selective Insurance's August 15, 2001, letter specifically told Kost that the law firm "representing the deceased,

Mark D. Hubacher" had sent a "notice of a loss occurring on 8/31/1999 in which your company was involved" because Kost's "driver, Ace E. Adkins, was the driver in the above accident." Further, the letter told Kost that Selective Insurance was "tendering this claim to you at this time for you and your insurance carrier to handle to conclusion." This was an apparent reference to the requirements in the July 1999 indemnification agreement that Kost "have insurance to insure against any liabilities arising out of operations" and recited "that [Kost] is responsible to indemnify and hold [Three T's Trucking] harmless for any claims in excess of the insurance coverage."

¶ 10.   Kost and Progressive Insurance assert, however, that under *Towne Realty, Inc. v. Zurich Insurance Co.*, 201 Wis. 2d 260, 548 N.W.2d 64 (1996), and *Kenefick v. Hitchcock*, 187 Wis. 2d 218, 522 N.W.2d 261 (Ct. App. 1994), the August 15, 2001, tender was ineffective because the Hubacher lawsuit had not yet been filed. In this case of apparent first impression, we disagree.

¶ 11.   First, *Towne Realty* concerned a purported tender by insureds to their insurance carrier after a lawsuit against the insureds had already been filed. *Id.*, 201 Wis. 2d at 264, 548 N.W.2d at 65. It hardly establishes a rule that no tender is valid under any circumstances unless the tender comes after the filing of a lawsuit. Second, *Kenefick* interpreted the specific "claims-made" language of an insurance policy that arguably covered the insured's damages in that case, and that required either an actual pending lawsuit or "written notice" of the claim. *Id.*, 187 Wis. 2d at 229, 522 N.W.2d at 265. It, too, does not support the contention by Kost and Progressive Insurance that the August 15, 2001, letter came too soon to be a valid tender.

¶ 12. As the trial court correctly observed, Selective Insurance's August 15, 2001, letter put Kost on notice that his obligations under the indemnification agreement were in play. Indeed, a rule that required a tender to await the actual filing of a lawsuit would discourage pre-lawsuit settlements because it would be a rare indemnitee who would risk having to fight about the reasonableness of a pre-lawsuit settlement with an indemnitor who could argue, "Gee, if you had only let us know, we could have worked out a settlement on better terms with fewer ancillary expenses." Thus, it is in everyone's interest—the indemnitor's, the indemnitee's, and the judicial system's—for the indemnitor to be involved as soon as possible. It is therefore generally typical for a liability-insurance policy to require notice of a *potential* claim as soon as possible even though a lawsuit may not have yet been filed. *See, e.g., Neff v. Pierzina*, 2001 WI 95, ¶ 29, 245 Wis. 2d 285, 296, 629 N.W.2d 177, 183.

¶ 13. Kost and Progressive Insurance also assert that the tender was ineffective because it was sent to Kost and not to Progressive Insurance. But the July 1999 indemnification agreement was between Kost and Three T's Trucking, and, moreover, the August 15, 2001, letter properly advised Kost to send the notice to his insurance carrier. Significantly, under the indemnification agreement Kost was on the hook whether or not he sent the notice to his carrier. Further, by a letter dated October 8, 2004, from its Chicago lawyers to the Chicago lawyers for Selective Insurance, Progressive Insurance "agreed to defend Three T's Trucking at this juncture, along with Ace Adkins, Gerald Kost, Jr., and Gerald Kost/Trucksport, Inc."

¶ 14. We affirm the trial court's determination that the August 15, 2001, letter was, as it recited on its face, a tender to Kost.

B. *Standing.*

¶ 15. Kost and Progressive Insurance assert that Three T's Trucking and Selective Insurance do not have standing to seek enforcement of Kost's agreement to indemnify Three T's Trucking. We, as did the trial court, disagree.

¶ 16. "Standing" is a concept that restricts access to judicial remedy to those who have suffered some injury because of something that someone else has either done or not done. *See Village of Slinger v. City of Hartford*, 2002 WI App 187, ¶ 9, 256 Wis. 2d 859, 865–866, 650 N.W.2d 81, 84 ("In order to have standing to sue, a party must have a personal stake in the outcome, and must be directly affected by the issues in controversy.") (citations omitted). Here, Three T's Trucking obviously has a judicially enforceable interest in seeing to it that Kost fulfill his indemnification obligations because Three T's Trucking faced exposure and expenses resulting from the Hubacher matter. It is no answer, as Kost and Progressive Insurance posit, to say that Three T's Trucking was insured in connection with the Hubacher matter by Selective Insurance; Three T's Trucking paid for that insurance and there is nothing in Kost's agreement to indemnify Three T's Trucking that says that the indemnification is only valid if either Three T's Trucking has no insurance or that Kost would be able to piggy-back whatever insurance Three T's Trucking had. *Cf. Travelers Indem. Co. v. Auto Driveaway Co.*, 89 Wis. 2d 255, 259–262, 278 N.W.2d 262, 264–265 (Ct. App. 1979) (recognizing the general validity of a bill-of-lading clause that gives the carrier the benefit of the shipper's insurance unless it conflicts with a specific clause in the shipper's policy).

691

¶ 17. Here, there was sufficient summary-judgment evidence of the costs to Three T's Trucking and Selective Insurance as a result of the Hubacher matter to establish a prima-facie entitlement to summary judgment in connection with those expenses, and if Kost and Progressive Insurance wanted to contend that there were genuine issues of material fact that precluded summary judgment for Three T's Trucking and Selective Insurance, or that would establish that Selective Insurance was a mere volunteer, it was the obligation of Kost and Progressive Insurance to so demonstrate. *See Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290–292, 507 N.W.2d 136, 139–140 (Ct. App. 1993). Indeed, as the trial court noted, "Progressive has already sent one check for legal fees directly to Selective." This, as the trial court pointed out, contradicts the contention by Kost and Progressive Insurance that Selective Insurance did not have "standing." Further, as we have seen, Progressive Insurance told Selective Insurance in an October 8, 2004, letter that it would "defend Three T's Trucking at this juncture."

¶ 18. We affirm the trial court's determination that Three T's Trucking and Selective Insurance had standing to seek enforcement of Kost's agreement to indemnify, defend, and hold Three T's Trucking harmless.

C. *Scope of indemnification agreement.*

¶ 19. Kost and Progressive Insurance argue that the trial court erred in interpreting the indemnification agreement by ruling that the specific provisions of the carriers' insurance contracts with their insureds (Progressive's contract with Kost, and Selective's con-

692

tract with Three T's Trucking) were immaterial to the issue of whether and to what extent Kost had a duty to indemnify Three T's Trucking under the July 1999 agreement. Kost and Progressive Insurance also argue that because the Hubacher Illinois complaint asserts that Adkins was an employee of Three T's Trucking (in addition to asserting that Adkins was also Kost's employee), Three T's Trucking was improperly seeking to be indemnified for its own negligence. We reject both contentions.

¶ 20.    First, it was *Kost,* not Progressive Insurance, who undertook to indemnify, defend, and hold Three T's Trucking harmless. Whether Progressive Insurance is responsible to make good on Kost's indemnification undertaking is a matter between Kost and Progressive, and is not material to the scope of Kost's obligations to Three T's Trucking. Nevertheless, as we have seen, on October 8, 2004, Progressive Insurance told Selective Insurance that Progressive *would* "defend Three T's Trucking at this juncture."

¶ 21.    Second, as we have also already seen, Three T's Trucking and Selective Insurance satisfied their summary-judgment burden in connection with expenses incurred as a result of the Hubacher matter, and, if Kost and Progressive Insurance believed that there were genuine issues of material fact in connection with either the expenses or Selective Insurance's right to be subrogated to Three T's Trucking's rights under the indemnification agreement, it had to make that showing. It has not done so.

¶ 22.    Third, as the trial court pointed out, "Progressive has already sent one check for legal fees directly to Selective." This strikes at the heart of the assertion by Kost and Progressive Insurance that there

was something in Selective Insurance's relationship with Three T's Trucking that bore on the scope of Kost's obligations to Three T's Trucking. If so, it was the obligation of Kost and Progressive Insurance under the *Transportation Insurance Co.* summary-judgment methodology to make that showing.

¶ 23.  Fourth, as noted, the Hubacher complaint also alleged that Adkins was employed by Kost, as did Selective Insurance's August 15, 2001, letter to Kost. As we have also seen, Kost's agreement with Three T's Trucking specifically declared that "[n]either [Kost] nor the employees, agents or servants of [Kost] are to be considered employees or servants of [Three T's Trucking] at any time, under any circumstances, or for any purpose." If there were a genuine issue of material fact as to whether Three T's Trucking had any employer/employee or principal/agent relationship with Adkins apart from Adkins's relationship with Kost, it was the burden of Kost and Progressive Insurance under *Transportation Insurance Co.* to show that. They have not done so.

¶ 24.  We affirm the trial court's application of Kost's indemnification agreement.

D.  *Accord and satisfaction.*

¶ 25.  As noted, when Three T's Trucking and Selective Insurance started this action against Kost and Progressive Insurance, the lawyer for Three T's Trucking assumed that May 7, 2004, was the day Three T's Trucking tendered its defense to Kost. Kost and Progressive Insurance agreed to pay Selective Insurance the $10,000 Selective Insurance said it expended from the May 7 date in connection with the Hubacher matter. Later, Three T's Trucking and Selective Insurance amended their pleadings to assert that the date of

tender was actually on August 15, 2001. Kost and Progressive Insurance contend that Progressive's payment of the $10,000 to Selective Insurance was an accord and satisfaction, and precludes Three T's Trucking and Selective Insurance from recovering more than the $10,000. We disagree.

¶ 26.  "An 'accord and satisfaction' is an agreement to discharge an existing *disputed* claim; it constitutes a defense to an action to enforce the claim." *Flambeau Prods. Corp. v. Honeywell Info. Sys., Inc.*, 116 Wis. 2d 95, 112, 341 N.W.2d 655, 664 (1984) (emphasis added).

> Ordinary contract principles apply in determining whether an agreement of "accord and satisfaction" is reached. Mere performance does not operate as a satisfaction unless offered as such to the creditor or claimant. There must be expressions sufficient to make the creditor understand or to make it unreasonable for him not to understand that the performance is offered in full satisfaction of the claim.

*Hoffman v. Ralston Purina Co.*, 86 Wis. 2d 445, 453, 273 N.W.2d 214, 217 (1979).

¶ 27.  The flaw in the accord-and-satisfaction argument advanced by Kost and Progressive Insurance is that when Progressive agreed to pay the $10,000 to Selective Insurance, Three T's Trucking's claim under the indemnification agreement was not "disputed" because both sides saw May 7, 2004, as the date of tender. Moreover, when Progressive Insurance actually paid the $10,000 its representative told the lawyer for Three T's Trucking and Selective Insurance:  "I understand that there is an additional sum (approximately an additional $45,000) in fees and costs incurred prior to

the agreement reached [based on the assumption that May 7, 2004, was the date of tender] and prior to the 5/7/04 tender that are also being claimed. *This draft* [the payment of $10,666.15] *is not meant to settle that part of your client's claim.*" (Emphasis added.)

¶ 28.  We affirm the trial court's application of Kost's indemnification agreement.[2]

*By the Court.*—Order affirmed.

---

[2] Although Kost and Progressive Insurance also assert in passing that Three T's Trucking and Selective Insurance are equitably estopped from seeking more than the $10,000 paid by Progressive, they do not develop an argument in connection with that contention. Accordingly, we do not address it. *See State v. Pettit,* 171 Wis. 2d 627, 646–647, 492 N.W.2d 633, 642 (Ct. App. 1992) (we will not assess undeveloped arguments).