Henry J. KRIER and
Badger Investment Realty, LLC, f/k/a
Vil-Kri Investments, LLC, Plaintiffs,

BADGER DISPOSAL OF WI, INC.,
Plaintiff-Appellant,

v.

Donald N. VILIONE and Virchow Krause &
Company, LLP, Defendants-Respondents.†

Henry J. KRIER, Badger Disposal of WI, Inc.
and Badger Investment Realty, LLC,
Plaintiffs-Appellants,

v.

Donald N. VILIONE and Virchow Krause &
Company, LLP, Defendants-Respondents.†

Court of Appeals

*Nos. 2006AP1573, 2006AP2290. Submitted on briefs August 7,
2007.—Decided October 2, 2007.*

2007 WI App 235

(Also reported in 742 N.W.2d 537.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert J. Gingras, Michael J. Luebke* and *Eric J. Haag* of *Gingras, Cates & Luebke, S.C.*, of Madison, and *Timothy D. Edwards* and *Daniel P. McAlvanah* of *Edwards Law Offices, LLC*, of Madison.

On behalf of the defendant-respondent Virchow Krause & Company LLP, the cause was submitted on the brief of *Ward I. Richter* and *William C. Williams* of *Bell, Gierhart & Moore, S.C.*, of Madison.

On behalf of the defendant-respondent Donald N. Vilione, the cause was submitted on the brief of *Terry E. Johnson* and *Donald N. Vilione* of *Peterson, Johnson & Murray, S.C.*, of Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J. Henry J. Krier and Badger Investment Realty, LLC (f/k/a Vil-Kri Investments, LLC) appeal from a final judgment dismissing their claims. Badger Disposal of WI, Inc. (f/k/a EOG Disposal, Inc.) appeals the trial court's nonfinal order for partial summary judgment limiting the damages that it can pursue in this matter.[2] Krier, EOG Disposal and Vil-Kri contend that: (1) the trial court failed to follow the standard methodology when it determined that sum-

---

[2] Following a transfer of ownership, Krier renamed EOG Disposal, Inc. (EOG Disposal) as Badger Disposal, Inc. and changed the name of Vil-Kri Investments, LLC (Vil-Kri) to Badger Investment Realty, LLC. Because the alleged damages

mary judgment was appropriate; (2) accountants are liable for all damages that flow from their misconduct; and (3) Krier has standing to recover damages. We conclude that Krier, EOG Disposal and Vil-Kri have asserted valid claims in this matter and that there are genuine issues of material fact for trial as to their damages. Accordingly, this case was not a proper subject for summary judgment disposition, and we reverse.

## I. BACKGROUND.

¶ 2. Krier and Michael Vilione were long-time co-owners of three separate, but interrelated, companies: EOG Environmental, Inc. (EOG Environmental), EOG Disposal and Vil-Kri. The companies had common ownership and intertwined functions related to their business of waste storage, including the storage of hazardous substances.

¶ 3. A dispute arose and Krier filed suit over Michael Vilione's alleged use of corporate assets for personal purposes.[3] Following mediation, as part of a

arose when the companies were known as EOG Disposal and Vil-Kri, we will refer to them by those names throughout this opinion for ease of reference.

We granted EOG Disposal's petition for leave to appeal from a nonfinal order of the trial court limiting the damages that EOG Disposal can pursue. The trial court dismissed Krier and Vil-Kri's claims in their entirety. Because their dismissal was a final judgment, Krier and Vil-Kri filed a separate appeal. We subsequently ordered Krier and Vil-Kri's appeal to be consolidated with EOG Disposal's interlocutory appeal.

[3] During his deposition, Michael Vilione repeatedly invoked his Fifth Amendment privileges, thereby creating an inference of guilt. *Grognet v. Fox Valley Trucking Serv.*, 45 Wis. 2d 235, 239, 172 N.W.2d 812 (1969) (explaining that "in a civil case as distinguished from a criminal case, an inference of guilt or

negotiated settlement agreement, Krier and Michael Vilione agreed that Krier would become the sole owner of EOG Disposal and Vil-Kri, and Michael Vilione would become the sole owner of EOG Environmental. The settlement agreement expressly exempted from the releases any claims of Krier, EOG Disposal and Vil-Kri against the accountant, who happened to be Michael Vilione's brother, Donald Vilione, and the accounting firm where Donald Vilione was employed, Virchow Krause & Company, LLP (Donald Vilione and Virchow Krause & Company, LLP, are collectively referred to as "Virchow Krause" throughout this opinion).[4]

¶ 4. Following settlement of the suit against Michael Vilione, Krier, EOG Disposal and Vil-Kri filed suit against Donald Vilione and Virchow Krause. Krier, EOG Disposal and Vil-Kri alleged a number of interrelated claims including accounting negligence, negligent misrepresentation, breach of fiduciary duty, conspiracy, injury to business and violation of the Wisconsin Organized Crime Control Act (WOCCA). They contend that from 1998 through 2002, "[Donald] Vilione, as a partner in Virchow Krause, knowingly falsified the accounting records for [EOG Disposal, EOG Environmental and Vil-Kri] to cover up and conceal the misappropriation

---

against the interest of the witness may be drawn from his invoking the fifth amendment").

[4] The mutual release provides in pertinent part:

> [I]n consideration of the mutual releases contained herein, KRIER, [EOG] DISPOSAL and VIL-KRI, and anyone claiming on behalf of or through any of them, hereby release, remise and forever discharge [MICHAEL C.] VILIONE, his employees, agents, heirs and assigns and [EOG] ENVIRONMENTAL . . . and any other parties who are or might be liable, *with the exception of their accountants,* of and from any and all claims . . . .

(Emphasis added.)

of . . . funds and expenditures by and to his brother, Michael Vilione." Krier, EOG Disposal and Vil-Kri further contend that Virchow Krause had notice that the alleged misappropriation and fraud were taking place and failed to disclose the fraud, errors and illegal acts to Krier. Virchow Krause performed accounting services for EOG Environmental, EOG Disposal and Vil-Kri; it also prepared Krier's personal tax returns.

¶ 5. As a result of the alleged accounting malpractice, Krier, EOG Disposal and Vil-Kri claim to have lost significant income and profits and incurred unnecessary debt, attorney's fees and expenses. EOG Disposal held a DNR permit that was going to enable it to expand, and, as a result, increase revenues; however, due to the theft, Krier, EOG Disposal and Vil-Kri contend that there was not enough money to follow through with this plan.

¶ 6. Virchow Krause filed a motion for partial summary judgment arguing that Krier, EOG Disposal and Vil-Kri's claims were based almost entirely on Michael Vilione's alleged thefts of EOG Environmental's assets, with the exception of EOG Disposal's claim related to Michael Vilione's misappropriation of $7000. Virchow Krause argued that only EOG Environmental or its current stockholders had standing to assert claims for damages to EOG Environmental. Consequently, it contended that Krier and Vil-Kri did not have standing to pursue their claims and should be dismissed. In addition, Virchow Krause sought partial summary judgment with respect to EOG Disposal, dismissing all of its claims other than its alleged loss of $7000.[5]

---

[5] During the summary judgment hearing, Virchow Krause's attorney stated:

¶ 7. In opposing the motion for partial summary judgment, Krier, EOG Disposal and Vil-Kri acknowledged that most of the funds that were misappropriated were from EOG Environmental accounts; however, they explained that their lawsuit was presented in terms of the loss of value and damages to Krier, EOG Disposal and Vil-Kri as a result of the misappropriation. They argued:

> This is not a shareholder's derivative action for damages to EOG Environmental. This is an action by an individual and two corporate entities for foreseeable damages that were *directly* incurred as a result of Defendants' tortious actions, including loss of value of the corporate entities that is directly tied to Defendant's underlying misconduct.

(Emphasis in original brief.)

¶ 8. Ultimately, the trial court concluded that Krier, EOG Disposal and Vil-Kri could not plead a diminution of value claim based upon the alleged tortious conduct at issue. With respect to Krier's claims, the trial court stated:

> [T]o me what the plaintiffs are doing here, in my view, are trying to take the damages caused to EOG Envi-

---

So the concept of what constitutes direct damages seems to lie at the core of the plaintiff's response to our motion. And in that regard, we have evidence which we're accepting for the sake of this motion's being proved that $1,282,000 was stolen from one of the entities, a Chapter C Corporation, EOG Environmental. Another $7,000 is alleged to have been stolen from a Chapter S Corporation, EOG Disposal.

We don't quarrel with the notion as we have made clear in our briefs that EOG Disposal having suffered that loss of $7,000 is entitled to proceed to try to recover it. And if they can pro[ve] other direct damages that belong to EOG Disposal, we don't quarrel with them pursuing those additional damages.

155

ronmental by Virchow Krause – if that be the case – and sort of morf [sic] those over to Disposal and Vil-Kri and allow this case to go forward and ask that the plaintiff be allowed to go forward on that theory, when the damages really are to EOG Environmental.

And I don't see how Mr. Krier has any kind of a claim here against Virchow Krause for the damages done to the corporations. These are damages to the corporations, not damages to him. He owns no shareholder interests in EOG Environmental as of this date. As of the date of the settlement, he gave up any claim that he had, I think, as a shareholder in EOG Environmental, because he gave up his ownership interest in EOG Environmental. So I don't see any claim that he has in this case, and I am granting the motion for summary judgment with respect to Mr. Krier.

¶ 9. The court then went on to address the validity of the claims alleged by EOG Disposal and Vil-Kri and concluded that they had failed to establish that they suffered any direct damages as a result of Virchow Krause's conduct, other than the $7000 allegedly stolen from EOG Disposal. The court concluded:

The only direct damages that I think have been identified to date in this case are the approximately $7,000 taken from EOG Disposal by Michael Vilione and not all [] the, what I think are indirect damages, that you want to claim were suffered by EOG Disposal and Vil-Kri as a consequence of the damages done to EOG Environmental by Virchow Krause. And you know just describing it that way I think makes it pretty clear that for them to claim –them being EOG Disposal and Vil-Kri – to claim the kind of damages that you want claimed is an indirect action, which is not – I don't think is appropriate under these circumstances.

. . . .

156

The damage done to EOG Environmental was direct damage by and foreseeable and all of that, and EOG Environmental has a claim. If all the things that plaintiff is saying are true, seems to me that they would have a claim against Virchow Krause for the damages done to EOG Environmental. But the damages done as a result of that to [EOG] Disposal and Vil-Kri are indirect and not, I don't think, subject to this kind of a claim.

¶ 10. The trial court granted summary judgment dismissing Krier and Vil-Kri's claims and allowed EOG Disposal's claims to continue only to the extent that they were not based on the initial misappropriation from EOG Environmental. Krier, EOG Disposal and Vil-Kri moved for reconsideration; the trial court denied the motion. They now appeal.

## II. ANALYSIS.

¶ 11. We review a grant of summary judgment *de novo,* applying the same standards and methodology as the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). We first must determine whether a claim for relief is set forth in the pleadings. *Id.* at 315. "In testing the sufficiency of a complaint, we take all facts pleaded by plaintiffs and all inferences which can reasonably be derived from those facts as true." *Id.* at 317.

¶ 12. If we determine that a claim has been asserted and that factual issues exist, we examine the "moving party's (in this case the defendants') affidavits or other proof to determine whether the moving party has made a *prima facie* case for summary judgment."

*Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980), *abrogated on other grounds by Olstad v. Microsoft Corp.*, 2005 WI 121, 284 Wis. 2d 224, 700 N.W.2d 139 (alteration in *Grams*). A *prima facie* case is one in which the "moving [party] must show a defense which would defeat the [non-moving, opposing party]." *Id.* If the moving party established a *prima facie* case, we must then determine whether the opposing party has shown that material facts are in dispute or that reasonable alternative inferences can be drawn from the undisputed material facts making trial appropriate. *Id.*

¶ 13. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2005–06).[6] Summary judgment should only be granted where the moving party demonstrates a right to judgment with such clarity that no room for controversy exists. *Grams*, 97 Wis. 2d at 338. Any doubts as to the existence of a genuine issue of material fact are to be resolved against the moving party. *Id.* at 338–39.

¶ 14. Under our summary judgment methodology, "the court does not decide an issue of fact. The court decides only whether a genuine issue of fact exists. The court does not decide issues of credibility, weigh the evidence, or choose between differing but reasonable inferences from the undisputed facts." *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 665, 476 N.W.2d 593 (Ct. App. 1991) (footnote and citation omitted).

---

[6] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

## A. Krier, EOG Disposal and Vil-Kri have standing to pursue claims against Virchow Krause for accounting malpractice.

¶ 15. The first step of the procedure described above is to examine the pleadings to determine whether a claim has been stated. Krier, EOG Disposal and Vil-Kri's complaint and submissions in response to Virchow Krause's motion for summary judgment allege a variety of claims including accounting negligence, negligent misrepresentation, breach of fiduciary duty, conspiracy, injury to business and violation of WOCCA, along with the consequent damages. Yet, the trial court held that Krier, EOG Disposal and Vil-Kri lacked standing to sue for Virchow Krause's tortious conduct based on its belief that the only entity that suffered damages in this matter was EOG Environmental (with the exception of approximately $7000 that was suffered by EOG Disposal). We disagree.

■■■■

¶ 16. " 'Standing' is a concept that restricts access to judicial remedy to those who have suffered some injury because of something that someone else has either done or not done." *Three T's Trucking v. Kost*, 2007 WI App 158, ¶ 16, 303 Wis. 2d 681, 736 N.W.2d 239. Standing will be found where "a party [has] a personal stake in the outcome of the controversy." *City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 228, 332 N.W.2d 782 (1983). Wisconsin courts have held that the law of standing should be liberally construed. *See Bence v. City of Milwaukee*, 107 Wis. 2d 469, 478, 320 N.W.2d 199 (1982); *see also City of Madison*, 112 Wis. 2d at 230 (noting that "even a trifling interest may be sufficient to confer standing").

¶ 17. With respect to accounting malpractice, the cases of *Citizens State Bank v. Timm, Schmidt & Co.*, 113 Wis. 2d 376, 335 N.W.2d 361 (1983), and *Chevron Chemical Co. v. Deloitte & Touche*, 168 Wis. 2d 323, 483 N.W.2d 314 (Ct. App. 1992), provide insight on the liability of accountants to third parties. *Citizens State Bank* stands for the proposition that an accountant's liability extends beyond the particular clients for whom the accountant has worked and can encompass other parties who may have been damaged by the malpractice. *Id.*, 113 Wis. 2d at 386. There, an accounting firm prepared financial statements for a corporation and based on the financial statements, Citizens State Bank made loans to the corporation. *Id.* at 378. The accounting firm subsequently discovered that the financial statements contained errors and when Citizens State Bank was notified, it called its loans due. *Id.* The corporation was then liquidated and dissolved, with a significant portion of Citizens State Bank's loan outstanding. *Id.* at 378–79.

¶ 18. Citizens State Bank filed suit against the accounting firm and its malpractice insurance company seeking to recover the remaining amount due on the loans it made to the corporation. *Id.* at 379. The Wisconsin Supreme Court reversed the trial court's grant of summary judgment to the accounting firm and concluded that the accounting firm could be held liable to Citizens State Bank, which had relied upon the erroneous financial statements, even though they were not in privity. *Id.* at 385. The court further concluded that the accounting firm failed to establish a *prima facie* case for summary judgment as there were genuine issues of material fact such that summary judgment should not have been granted. *Id.* at 387–88.

160

¶ 19. In *Chevron Chemical Co.*, a company hired Deloitte as an independent auditor. *Id.*, 168 Wis. 2d at 327–28. Deloitte prepared an audit report based on financial statements. *Id.* at 328. The financial statements were delivered to the company's creditors, one of which was Chevron. *Id.* Deloitte later discovered that the company's financial statements, on which it based its audit, were in error and urged the company to recall the report. *Id.* The company refused and when Deloitte indicated that it would withdraw the audit report and advise those entities relying on the report of the error, the company threatened to pursue legal action against Deloitte. *Id.* at 328–29. As a result, Deloitte did not notify Chevron. *Id.* at 329.

¶ 20. The company subsequently filed for bankruptcy and Chevron initiated suit based on Deloitte's negligence in performing the audit and Deloitte's misrepresentation in failing to notify Chevron that Deloitte was withdrawing the audit report. *Id.* In reviewing the holding of *Citizens State Bank* that "[i]n general, 'accountants' liability to third parties should be determined under the accepted principles of Wisconsin negligence law,'" the court in *Chevron Chemical Co.* concluded that Deloitte was liable for negligent misrepresentation to Chevron, one of the company's creditors that relied on Deloitte's report.[7] *Id.*, 168 Wis. 2d at

[7] We are not persuaded by Virchow Krauses attempt to distinguish *Citizens State Bank v. Timm, Schmidt Co.*, 113 Wis. 2d 376, 335 N.W.2d 361 (1983), and *Chevron Chemical Co. v. Deloitte Touche*, 168 Wis. 2d 323, 483 N.W.2d 314 (Ct. App. 1992), on the basis that the third parties in those cases alleged that they relied upon documents showing that the corporations were making a profit, which led them to extend credit when they otherwise would not have. Virchow Krause contends that Krier, EOG Disposal and Vil-Kri knew that EOG Environmental was running at a loss; therefore, they cannot claim that they

334–35 (quoting *Citizens State Bank*, 113 Wis. 2d at 386).

¶ 21. Here, the pleadings contain allegations that Virchow Krause was responsible for accounting services for all of the EOG Entities (i.e., EOG Environmental, EOG Disposal and Vil-Kri), prepared Krier and Michael Vilione's personal tax returns and assisted Michael Vilione, in his capacity as chief executive officer of both EOG Environmental and EOG Disposal, with accounting, tax planning and financing arrangements. As such, the client-based relationships between Virchow Krause and Krier, EOG Disposal and Vil-Kri are closer than the relationships between the accounting firms and third parties in *Citizens State Bank* and *Chevron Chemical Co.*

¶ 22. Virchow Krause relies on *Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F. Supp. 858 (E.D. Va. 1980), to support its contention that the claims at issue there are analogous to those brought in the instant matter by EOG Disposal and Vil-Kri. In that case, Picture Lake Campground, Inc. (Picture Lake) and First Management Corporation (First Management) filed an action against Holiday Inns, Inc. (Holiday Inns) for damages that allegedly resulted from a franchise transaction. *Id.* at 860. In response, Holiday Inns filed a motion to dismiss the various claims alleged

---

relied on inaccurate financial statements prepared by Virchow Krause. This distinction is of no consequence as *Citizens State Bank* and *Chevron Chemical Co.* stand for the broad proposition that accountants can be held liable to third parties, even in the absence of privity. Virchow Krause cannot avoid the holdings of those cases simply by contending that Krier, EOG Disposal and Vil-Kri were aware that EOG Environmental was operating at a loss.

based on First Management's lack of standing. *Id.* at 861. First Management owned and leased the Picture Lake property to Picture Lake, and Picture Lake was responsible for operating the Holiday Inn franchise involved. *Id.* at 862.

¶ 23. In analyzing the standing issue, the *Picture Lake* court took issue with First Management and Picture Lake's arguments that although they were engaged in distinct businesses, their interests were intertwined such that First Management was entitled to sue for tortious injury to its business or property. *Id.* at 862–63. The court found that First Management's officers and directors made a business decision that two corporations were necessary, one that would own and lease the property and another to operate the franchise. *Id.* at 863. Consequently, the court held that First Management was left with the repercussions, both negative and positive, of that decision. *Id.* The court went on to conclude that "First Management ha[d] no standing to sue Holiday Inns for wrongs allegedly inflicted by Holiday Inns on the business or property interest of Picture Lake." *Id.*

¶ 24. We conclude that Virchow Krause's reliance on *Picture Lake* is misplaced. First, Virchow Krause's emphasis on the *Picture Lake* holding reflects the mistaken belief that EOG Environmental was the only entity that was damaged by Virchow Krause's misconduct. In contrast to the situation involved in *Picture Lake*, where First Management's claims were based on damage allegedly incurred by Picture Lake, here, Krier, EOG Disposal and Vil-Kri have asserted their own claims for damages, which are separate from those that could allegedly be claimed by EOG Environmental. Moreover, *Picture Lake* is particularly unhelpful given

163

that it does not involve accounting malpractice, and case law from outside jurisdictions is not controlling in Wisconsin.

¶ 25. We conclude Virchow Krause has failed to establish a *prima facie* case for summary judgment given the scope of an accounting firm's liability to those who may have been damaged by its alleged malpractice. *See Citizens State Bank*, 113 Wis. 2d at 386; *see also Grams*, 97 Wis. 2d at 338. In light of the fact that Krier, EOG Disposal and Vil-Kri have asserted valid claims against Virchow Krause, it follows then that their interests are more than sufficient to confer standing. *See Bence*, 107 Wis. 2d at 478; *see also City of Madison*, 112 Wis. 2d at 230.

*B. Krier, EOG Disposal and Vil-Kri are entitled to recover damages.*

¶ 26. Virchow Krause asserts that *Chevron Chemical Co.* and *Citizens State Bank* "stand for the proposition that a party injured by an accountant's negligence can recover damages to that party, not, as Appellants contend, that an injured party can recover damages suffered by someone else." This statement overlooks that Krier, EOG Disposal and Vil-Kri do not seek to recover damages that were allegedly suffered by someone else. Rather, as parties claiming to have been injured by Virchow Krause's malpractice, they seek to recover damages that *they* incurred.

¶ 27. The forensic accounting expert for Krier, EOG Disposal and Vil-Kri opined that the loss of goodwill and enterprise value incurred by Krier, with respect to his ownership interests in the EOG Entities,

is in excess of eleven million dollars.[8] Among other consequences, the purported loss precluded "EOG Entities from taking advantage of the important sales opportunities that existed." These damage valuations, coupled with the allegations of the complaint, create genuine issues for trial regarding the extent of damages incurred as a result of Virchow Krause's alleged malpractice. *See Fortier*, 164 Wis. 2d at 665 (we do not decide issues of fact, we only determine whether genuine issues of fact exist).

¶ 28. In light of our decision that Krier, EOG Disposal and Vil-Kri have valid claims and that there

---

[8] Having concluded that Krier, individually, has standing to assert a claim in this matter based on accounting malpractice, there is no need to delve into a discussion of Wisconsin's derivative action statutes and related case law on which Virchow Krause relies for the proposition that "[a] corporation, and not is shareholders, business partners or sister corporations is the appropriate entity to assert claims of injury to that corporation." Here, Krier, EOG Disposal and Vil-Kri have made separate claims against Virchow Krause, none of which amount to a shareholder's derivative action.

With respect to Donald Vilione's arguments pertaining to the manner in which Krier presented damage evidence establishing "a decline in the claimed overall value of the business enterprises on a combined basis from which Mr. Krier sought to present an individual damage claim based on the decline in the value of his ownership interest in those business entities," and any other challenges to the methodology behind Krier, EOG Disposal and Vil-Kri's damage calculations, those issues pertaining to expert damage calculations are beyond the scope of this appeal and are best addressed at the time of trial. *See Ricco v. Riva*, 2003 WI App 182, ¶ 17, 266 Wis. 2d 696, 669 N.W.2d 193 ("[t]he weight and credibility to be given to the opinions of expert witnesses are uniquely within the province of the fact finder," not the court on summary judgment).

are genuine issues for trial as to their damages, the trial court's decision to limit EOG Disposal's recovery to approximately $7000 was in error. We conclude that the trial court improperly granted Virchow Krause's motion for summary judgment with respect to Krier and Vil-Kri and improperly limited the damages that EOG Disposal could recover. Accordingly, we reverse and remand for trial.[9]

*By the Court.*—Orders and judgment reversed and cause remanded for further proceedings consistent with this opinion.

[9] Because we conclude that a sufficient showing has been made to survive summary judgment on other grounds, we are not going to address whether the principles of equity necessitate that the corporate structures of the entities involve be ignored. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (unnecessary to decide non-dispositive issues). Likewise, we need not discuss Krier, EOG Disposal and Vil-Kri's argument that affidavits submitted with their motion for reconsideration were improperly stricken. *See id.*